**BOSTON & MAINE CORPORATION,**
Plaintiff, Appellant,

v.

**TOWN OF HAMPTON, Defendant,**
Appellee.

No. 92–1832.

United States Court of Appeals,
First Circuit.

Heard Dec. 9, 1992.

Decided March 5, 1993.

Ernest J. Babcock, Portland, ME, with whom Elizabeth A. Germani, Providence, and Friedman & Babcock, Portland, ME, were on brief for plaintiff, appellant.

Thomas F. Kehr, Manchester, with whom Craig L. Staples and Cleveland, Waters and Bass, P.A., Concord, NH, were on brief for appellee.

Before TORRUELLA and CYR, Circuit Judges, and KEETON,* District Judge.

KEETON, District Judge.

## I. Introduction

On a snowy day in March, 1988, Ms. Jeanne Lynch was driving her car on Exeter Road in Hampton, New Hampshire. At the approach to a bridge, her car skidded over an icy patch of road. She lost control. The car crashed through the side railing of the bridge and fell twenty feet onto the railroad tracks below. The bridge and the railroad tracks were owned by Boston and Maine Corporation ("B & M").

In July 1989, Lynch sued B & M in the Superior Court of New Hampshire (the "Lynch case"). She chose not to sue the Town of Hampton ("Hampton"). Though the record before us is not crystal clear (and because the matter is not decisive, we have not called upon counsel to clarify it), we understand that B & M then filed a separate action against Hampton in the Superior Court, seeking contribution and indemnity. (Hampton Brief at 2.) Also, on November 3, 1989 B & M filed in the Lynch case a "motion to join the Town of Hampton as a direct defendant as to Ms. Lynch...." (*Id.*) This B & M motion apparently did not assert any claim by B & M against Hampton. In December 1989, B & M moved in the Lynch case for "a nonsuit without prejudice" to its contribution and indemnification rights against Hampton. (*Id.*) The record before us does not disclose the precise intent or effect of this motion of B & M, as defendant, to have another entity joined as a "direct defendant," when the plaintiff, Lynch, did not choose to make that entity a defendant. It does appear, however, that at the time of this motion in the Lynch case, B & M did not attempt to plead any claim against Hampton for contribution or indemnity in the Lynch case. Apparently B & M was then intending to pursue its separate action against Hampton in the Superior Court. When the Superior Court, in December 1989, allowed B & M's motion for a "nonsuit" in the Lynch case, apparently the Superior Court and the parties treated this as an order eliminating Hampton as a "direct defendant as to Ms. Lynch."

Trial in the Lynch case was to begin on April 1, 1991. Shortly before that date, Lynch settled with B & M. Hampton asserts that a release of any claim by Lynch against Hampton was part of this settlement. B & M, contending that its rights of contribution and indemnity matured when it settled with Lynch, then attempted in the Lynch case to proceed against Hampton to recover from Hampton all or some of the amounts B & M paid to Lynch in settlement. Hampton, having been a defendant only as to Lynch (and then only on the motion of B & M), moved to dismiss after Lynch settled with B & M. The Superior Court granted this motion over B & M's objection.

After the Superior Court dismissed the Lynch case, B & M filed (in 1991), in the United States District Court for the District of New Hampshire, a civil action against Hampton for contribution and indemnity.

In September 1991, Hampton moved to dismiss the federal action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, citing B & M's failure to present factual allegations supporting a claim that Hampton had actual notice of a hazardous condition at the time and place of Lynch's accident. After some procedural maneuvation.

* Of the District of Massachusetts, sitting by desig-

vering, the district court dismissed the complaint for failure to allege facts sufficient to support a claim of actual notice and opportunity to correct. The Clerk accordingly entered final judgment against B & M.

B & M's appeal from this final judgment presents two issues. First, did the district court err in concluding that the applicable common law of New Hampshire requires actual notice of a hazardous condition and a reasonable opportunity to correct the hazardous condition before a municipality may be held liable for injuries caused by allegedly inadequate winter maintenance of its roadways? Second, did the district court commit reversible error in dismissing for failure to plead with particularity facts sufficient to meet the substantive law standard of municipal liability in New Hampshire?

For the reasons that follow, we affirm the judgment of the district court.

## II. Applicable Standard of Care for Municipal Liability

### A. Standard of Review

■ "[A] court of appeals should review *de novo* a district court's determination of state law." *Salve Regina College v. Russell,* —— U.S. ——, ——, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991); *G.D. v. Westmoreland School Dist.,* 930 F.2d 942, 946 (1st Cir.1991). "When *de novo* review is compelled, no form of appellate deference is acceptable." *Salve Regina,* —— U.S. at ——, 111 S.Ct. at 1224. Nevertheless, "[i]n a case where the controlling question of state law remains unsettled, it is not unreasonable to assume that the considered judgment of the court of appeals frequently will coincide with the reasoned determination of the district court." *Id.* —— U.S. at ——, 111 at 1224. This is such a case. Although we reach the same holding as did the district court regarding state law, we also note that the precise issue of state law has not been squarely answered in state decisions. Accordingly, we address the issue fully.

### B. Common Law Duty of Actual Notice and Reasonable Opportunity to Correct

Almost two decades ago, the New Hampshire Supreme Court abrogated the common law partial immunity from liability historically available to municipalities. *Merrill v. City of Manchester,* 114 N.H. 722, 332 A.2d 378 (1974). In abolishing the judicially created rule of immunity the Court did not impose "absolute or strict liability on cities and towns." *Id.* 332 A.2d at 383. Instead, it concluded that "municipalities should be held to the same safety standards as other citizens and that they are subject to the same rules of liability as private corporations." *City of Dover v. Imperial Casualty & Indemnity Co.,* 133 N.H. 109, 575 A.2d 1280, 1283 (1990) (citing *Merrill,* 332 A.2d at 383).

Standing alone, however, this quoted statement of the general rule of municipal liability in New Hampshire under the common law of negligence can easily be misunderstood. At the same time the Court declared this rule in *Merrill,* it also made clear that the general rule of liability for negligence does not apply to "acts and omissions constituting [either] (a) the exercise of a legislative or judicial function, [or] (b) the exercise of an executive of planning function, involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion." *Merrill,* 332 A.2d at 383.

We need not be concerned about whether these two qualifications are correctly described as "exceptions" or "deviations" from the scope of liability of private corporations or instead as merely applications of ordinary principles regarding the duty of reasonable care in the distinctive circumstances of municipal actions and functions. Unlike individuals and private corporations engaged solely in proprietary activities, municipal entities also have legislative, judicial, and executive functions. They are charged with responsibility for acting to represent the public and serve the public interest to an extent and in ways beyond any duty or authority of a private corpora-

tion. Thus, for reasons developed more fully in later sections of this opinion, the requirements of actual notice and opportunity to correct hazards on municipal roads are entirely compatible with the declaration that municipalities are held to the same standards of conduct and the same rules of tort liability as private corporations and other citizens. In any event, we conclude that insofar as municipal liability is governed by judicial decisions rather than statutes, the distinctive limitations on the scope of municipal liability stated in *Merrill* have remained firmly in place in the law of New Hampshire ever since *Merrill* was decided.

### C. Statutory Partial Preservation of the Common Law Immunity

In *Merrill*, the Court noted that "the legislature has authority to specify the terms and conditions of suit against cities and towns, limit the amount of recovery, or take any other action which in its wisdom it may deem proper." *Merrill*, 332 A.2d at 384. The Court, accordingly, stayed for six months the effective date of its abrogation of common law immunity "[t]o permit the legislature to take action in regard to the social and economic factors resulting from [the] decision." *Id.*

In response to *Merrill*, the legislature enacted RSA 507–B. 1975 N.H.Laws, ch. 483. Subject to exceptions not relevant here, this statute purportedly preserved for municipalities, *in part*, the scope of the immunity that the decision in *Merrill* would otherwise have destroyed. For example, the statute declared that municipalities would not be liable for accidents occurring on "public sidewalks, streets, [and] highways...." N.H.Rev.Stat.Ann. 507–B:2, I (1975).

### D. Judicial Declaration of Unconstitutionality of the Statutory Preservation of Immunity

Neither by later legislation nor by judicial decision had any change in the declared statutory preservation of partial protection of municipalities against tort liability been announced before the time of Lynch's accident in 1988. In 1990, however, the Supreme Court of New Hampshire declared the 1975 statute unconstitutional, on the ground that such a broad exemption from liability violated the equal protection provisions of the New Hampshire Constitution. *City of Dover*, 575 A.2d at 1286–87 (citing N.H. Const. Part I., Arts. II and XII).

### E. Later Statutes and Court Opinions

In response to the Court's invalidation, in *City of Dover*, of RSA 507–B:2, I, "the 1991 session of the legislature amended the laws regarding immunity for public highways to provide that municipalities would only be liable for highway insufficiencies about which they had received written or actual notice and failed to take appropriate action." 14 Peter J. Loughlin, *New Hampshire Practice* § 1029 (1990 & Supp.1991) (citing 1991 N.H.Laws, ch. 385); *see also Opinion of the Justices*, 134 N.H. 266, 592 A.2d 180 (1991) (issuing an advisory opinion that the proposed highway liability legislation was constitutional with a few exceptions not relevant here). "The law [as amended in 1991] also provided a specific exemption for highway insufficiencies caused by inclement weather as long as the municipality is implementing a winter or inclement weather policy in good faith." 14 Peter J. Loughlin, *New Hampshire Practice* § 1029 (1990 & Supp.1991) (citing N.H.Rev.Stat.Ann. 231:92–a (1991)).

### F. Arguments Regarding Retroactive or Prospective Application of Judicial Declaration of Unconstitutionality of a Statute

The briefs and arguments of the parties in this case have stated contrasting arguments as to whether the 1990 judicial declaration (in *City of Dover*) of unconstitutionality of the 1975 statute applies retroactively to accidents occurring before the declaration, or to cases filed before the declaration, or to adjudications occurring before the declaration, or to claims for indemnity maturing before the declaration—or instead only prospectively as to accidents, or case filings, or adjudications occurring after the declaration, or to claims for indemnity maturing after the declaration (includ-

ing B & M's claim alleged by B & M to have "arisen" only when it made a payment in settlement with Lynch).

We conclude that it is unnecessary to delve into these questions to decide this appeal because, as we explain below, the substantive common law of municipal liability in New Hampshire included the requirement of actual notice and opportunity to correct road hazards throughout the period commencing with the effective date of the *Merrill* decision and continuing to the present—except to the extent superseded by a substantive rule providing different (and at least in most respects greater) protection for municipalities under the 1991 and 1992 statutes.

### G. The Law of New Hampshire Governing this Action

The precise issue of New Hampshire law governing this action has not yet been squarely addressed by the Supreme Court of New Hampshire. If that Court chooses to do so, it may address this issue in an interlocutory appeal currently before that Court, *Schoff v. City of Somersworth*, No. 90–C–006, (Sup.Ct. March 12, 1992), *appeal docketed*, No. 92–418 (N.H. July 15, 1992). For three reasons, however, we conclude that we need not delay disposition of this appeal. We state these reasons at the outset and then explain.

First, every statutory mandate and every judicial holding of the Supreme Court of New Hampshire bearing on municipal liability during the period from 1974 to the present date is consistent with requiring actual notice of a road hazard and an opportunity to correct it as a prerequisite to municipal liability for hazards on public roads. Legislative mandates, even when not reciting this requirement explicitly, have never negated it, either explicitly or implicitly. Instead, legislation has mandated some other (and, we conclude additional) protection of municipal coffers against the risks of tort liability and the costs of litigation associated with those risks. Never in any statute, or in any legislative history called to our attention, has there been even a hint or suggestion that a statute was designed to expand municipal tort liability to require less of a claimant than proof of actual notice and opportunity to correct.

Second, not only the explicit statutory mandates and New Hampshire Supreme Court holdings but also the purpose implicitly manifested in the statutes and Court holdings have been uniformly compatible with requiring actual notice and opportunity to correct, at a minimum.

Third, in these circumstances, for this court to interpret the opinion in *City of Dover*, holding the 1975 statute unconstitutional, as wiping out not only the statutory mandate for greater immunity but also a common law standard that actual notice and opportunity to correct are prerequisites to municipal liability would be to interpret statutes and precedents as accidentally, by a quirk, creating a liability contrary to the purpose implicit in all the statutes and precedents from which we must take our guidance in determining the applicable state law.

As previously noted, none of the specific mandates of the 1975, 1991, and 1992 statutes controls this case. The mandate of the 1975 statute does not, because it has been declared unconstitutional. The mandates of the 1991 and 1992 statutes do not, because they do not purport to apply retroactively to the 1988 accident on which this case is based. Nevertheless, a close examination of these statutes yields objective evidence of underlying assumptions about the common law rules in effect, both before and after the modifications effected by statutory mandate (or attempted but not effected, in the case of the 1975 statute), and the manifested purpose to modify those rules only to the extent stated in the statutes and holdings.

The arguments of the parties, briefly stated and without details of elaboration, run along the following lines. The Town of Hampton argues that we should predict (1) that the Supreme Court of New Hampshire will hold that the 1975 statute remained in effect at the time of the Lynch accident because only later did the Supreme Court declare it to be unconstitutional and (2) that the Supreme Court's declaration, after the

date of the Lynch accident that actual notice and opportunity to correct are elements of municipal liability for road hazards is retroactively effective and therefore applies to the Lynch case. Though recognizing each of these possibilities, we conclude, for reasons explained below, that it is unnecessary to decision of this case for us to make either of these predictions. B & M's argument, on the other hand, is less precisely focused, but we understand the contention to be that when *City of Dover* declared the immunity statute unconstitutional, all municipal immunity was wiped out and none was restored until the 1991 legislation was enacted.

■ An unstated but apparently invited inference from B & M's argument is that, in declaring unconstitutional a statute that had been in effect from the delayed date on which *Merrill* became effective in abolishing common law municipal immunity, *City of Dover* left municipalities with no protection against liability other than rules applicable also to private citizens and corporations, and that, for example, municipalities were subject to an ordinary negligence standard even with respect to discretionary decisions involving raising and allocating municipal resources for all municipal functions, including snow and ice removal in winter storms, regardless of what the costs in resources might be. We conclude instead, that the two limitations upon municipal liability identified in *Merrill* remained in effect, and along with them (because a contrary rule would have been incompatible with these limitations) the prerequisites of actual notice and opportunity to correct road hazards in adverse winter weather. The Court's decision in *City of Dover* did not manifest an intent to create a gap such as that asserted by B & M in the continuity of legal protection against liability in areas affected by municipal discretionary functions.

B & M argues for an interpretation of New Hampshire law contrary to all policy pronouncements of both the Court and the legislature. Adopting B & M's argument would in effect be attributing to the Court's decision in *City of Dover* a back-handed kind of judicial lawmaking that created a greater liability than either the legislature or the Court had ever declared to be the intent of its action.

Our conclusion that no such mandate or purpose was ever expressed by the Court or the legislature is reinforced by a review of judicial and legislative mandates from *Merrill* forward to the present date. *See, e.g., Merrill*, 332 A.2d at 383 (general negligence rule does not apply to acts or omissions constituting the exercise of a high degree of official judgment or discretion) and *id.* at 385 (Duncan, J., concurring) ("Government cannot merely be made liable as private persons are, for public entities are fundamentally different from private persons.").(citations omitted); *Estate of Cargill v. City of Rochester*, 119 N.H. 661, 406 A.2d 704, 706 (1979) (noting that "there *are* real and vital differences between the situations of governmental units and of private parties as potential tort defendants") (quoting Cooperrider, *The Court, the Legislature, and Governmental Tort Liability in Michigan*, 72 Mich. L.Rev. 187, 272 (1973)) (internal quotation marks omitted); *City of Dover*, 575 A.2d at 1284 ("In determining whether municipal liability can be limited, the right of an injured plaintiff to recover must be balanced against the competing interests of the municipality.") (citing *Opinion of the Justices*, 126 N.H. 554, 493 A.2d 1182, 1192 (1985)). In an advisory opinion on the prospective constitutionality of post-*City of Dover* legislation, the New Hampshire Supreme Court construed the "actual notice" and "adequate opportunity to respond" mandates of *City of Dover* as "requirements," *Opinion of the Justices*, 592 A.2d at 185, and concluded that *"City of Dover* plainly limits a municipality's liability to instances of *actual*, not *constructive*, knowledge," *id.* at 186 (citing *City of Dover*, 575 A.2d at 1286) (emphasis in original). *Opinion of the Justices*, in further comment on *City of Dover*, (1) concludes that *City of Dover* "explicitly stated that a municipality may be held to a lower standard of care with respect to its highways and sidewalks than a private corporation," *Opinion of the Justices*, 592 A.2d at 187–

88 (citing *City of Dover*, 575 A.2d at 1285), and (2) characterizes the declaration that "no municipality be held liable for an insufficiency unless it has had adequate opportunity to respond to it" as the "mandate" of *City of Dover, Opinion of the Justices*, 592 A.2d at 186–87.

We also note that the standard of actual notice and opportunity to correct was codified by statute in January of 1992. *See* N.H.Rev.Stat.Ann. 231:90–92. Although the statutes of 1991 and 1992 are not binding in this case, they tend to confirm the continuing pattern of the expressions of New Hampshire public policy in this area of the law.

We conclude that we would be disregarding a compelling pattern of formal expressions of the legislature and the Court in New Hampshire were we to sustain B & M's position regarding the substantive law of New Hampshire applicable to this case.

### III.

Having determined that the district court properly interpreted New Hampshire law as requiring "actual notice" and an "opportunity to correct" as prerequisites to liability of Hampton, we must next determine whether the district court's dismissal on the pleadings was reversible error. We review the granting of Hampton's motion to dismiss *de novo*. *See Garita Hotel Ltd. Partnership v. Ponce Federal Bank, F.S.B.*, 958 F.2d 15, 17 (1st Cir.1992).

#### A. *Nature of the Procedural Issue*

■ This case raises the issue of how much factual particularity a district court may require a plaintiff to plead in order to avoid dismissal. The district court's dismissal was founded on the failure of the initial and amended pleadings to allege even an outline or summary of facts sufficient to support the alleged conclusions of "notice" of a particular hazard and "opportunity to correct" it.

As explained below, we were initially concerned that deciding this appeal would require us (a) to resolve an apparent tension among previous decisions within this circuit permitting mere notice pleading in some instances and in others requiring that a party plead facts with at least minimal particularity, or (b) to determine that these precedents can be reconciled and that this case is in its nature more like one among these precedents than any other, and is therefore governed by it. On close analysis, however, we have concluded that this appeal should be decided on a narrower ground that leaves these interesting and important questions for another day.

In this case, the district court allowed leave to file an amendment (the first) that was tendered in response to Hampton's motion to dismiss for failure to state a claim. The district court then ordered dismissal of B & M's claim against the town because the pleading (as amended) still failed to allege facts sufficient to support the alleged conclusions of actual notice and opportunity to correct a particularly identified hazard. Having thus received notice that the district court was invoking a particularity-of-pleading requirement for the state law issues of actual notice and opportunity to correct an identified hazard, B & M filed a motion to reconsider and a motion for leave to file a second amended pleading (adding several paragraphs in an apparent attempt to meet the district court's particularity-of-pleading requirement). Having determined that all the facts alleged by B & M, including those stated in the tendered second amendment, were insufficient to state factual support for the alleged conclusions of actual notice and opportunity to correct, the district court denied the motions to reconsider and for leave to file a second amendment, thus leaving in effect a final judgment of dismissal of B & M's claims.

In view of (1) the explicit notice to B & M that the district court had invoked and would apply a particularity-of-pleading requirement in the circumstances of this case, (2) B & M's tendered second amendment attempting (and, for the reasons explained in Section C, *infra*, completely failing) to meet this requirement by adding factual allegations, and (3) the lack of any reasoned basis for an expectation that further discovery, conducted after a previous

opportunity of more than two years to engage in any appropriate discovery, would turn up evidence beyond that B & M already knew and relied upon in drafting its proposed second amendment, we conclude that returning this case to the district court for further proceedings would needlessly waste public and private resources. If it was error for the district court to invoke a heightened standard of particularity of pleading in this context (an issue that perhaps could be determined only by resolving a tension among precedents), in the circumstances of this case we hold that it was harmless error.

The existence of a tension among precedents bearing upon pleading requirements is illustrated by a comparison of the holdings and reasoning of the First Circuit cases cited immediately below. The general rule that notice pleading is sufficient is stated in Fed.R.Civ.P. 8(a), and is supported by decisions in this circuit. *E.g., DiMella v. Gray Lines of Boston, Inc.,* 836 F.2d 718, 721 (1st Cir.1988) (holding plaintiff did not have burden to plead reckless conduct to overcome immunity under Massachusetts law, but noting allegation of failure to repair with reckless disregard for public safety was sufficient and dismissal "on the ground that there were no specific facts alleged was inconsistent with the modest pleading requirements of Fed. R.Civ.P. 8(a)"). Nevertheless, in many contexts beyond the scope of particularity requirements for allegations of fraud, stated in Fed.R.Civ.P. 9(b), First Circuit decisions have required at least a minimal level of factual particularity rather than mere allegations of conclusions. *See, e.g., Resolution Trust Corp. v. Driscoll,* 985 F.2d 44, 48 (1st Cir.1993) (for claim that defendant had assumed debt obligation to claimant, "one conclusory sentence" was insufficient to avoid dismissal where nothing "remotely suggests the factual basis for this claim"; "[f]actual allegations in a complaint are assumed to be true when a court is passing upon a motion to dismiss, but this tolerance does not extend to legal conclusions, or to bald assertions.") (internal quotation marks and citations omitted); *U.S. v. AVX Corp.,* 962 F.2d 108, 115 (1st Cir.1992) ("the de-

gree of specificity with which the operative facts must be stated in the pleadings varies depending on the case's context.... [W]here standing is at issue, heightened specificity is obligatory at the pleading stage"; describing *Gooley, infra,* as the standard in the "ordinary case"); *Roth v. U.S.,* 952 F.2d 611, 613 (1st Cir.1991) (12(b)(6) standard for tort claims that were preempted by Civil Services Reform Act does not require court to accept "unsubstantiated conclusions"); *Gilbert v. Cambridge,* 932 F.2d 51, 62 (1st Cir.1991) (rejecting allegation of futility of claim proceeding as "rank supposition" in challenge to constitutionality of rent control), *cert. denied,* —— U.S. ——, 112 S.Ct. 192, 116 L.Ed.2d 153 (1991); *Romani v. Shearson Lehman Hutton,* 929 F.2d 875, 878 (1st Cir.1991) ("Whether or not the time, place and content specificity is met, however, the complaint nevertheless is deficient because the allegations of [securities] fraud are entirely unsupported. The complaint contains no factual allegations that would support a reasonable inference [supporting allegation that specifically identified statements were made with knowledge of falsity]"); *Fleming v. Lind–Waldock & Co.,* 922 F.2d 20, 23–24 (1st Cir.1990) ("requiring that each general allegation be supported by a specific factual basis"; allegations of injury from alleged fraud were "merely conclusions unsubstantiated by fact"); *Correa–Martinez v. Arrillaga-Belendez,* 903 F.2d 49, 52–53 (1st Cir.1990) (for claim of civil rights violation, court need not credit "unsubstantiated conclusions"; plaintiff cannot "rest on subjective characterizations or conclusory descriptions of a general scenario which could be dominated by unpleaded facts..... The alleged facts must specifically identify the particular instance(s) of discriminatory treatment and, as a logical exercise, adequately support the thesis that the discrimination was unlawful.") (internal quotation marks and citations omitted); *Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 16 (1st Cir.1989) (in 12(b)(6) motion, court need not credit unsupported conclusions, and the need for specific factual support of general allegations is even greater in civil

rights cases); *Natal v. Christian & Missionary Alliance,* 878 F.2d 1575, 1578 (1st Cir.1989) ("[e]mpty generalities will not suffice" in ambiguous claim concerning eviction); *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 515 (1st Cir.1988) ("minimally sufficient factual predicate" necessary for allegation that offer was not "bona fide" in claim for violation of Petroleum Marketing Practices Act; general allegation alone was insufficient to permit a claimant "to drag a defendant past the pleading threshold"); *Lefkowitz v. Smith Barney, Harris Upham & Co.,* 804 F.2d 154, 155–57 (1st Cir. 1986) (per curiam) (in claim for securities fraud for failure to disclose "unsuitability" of investments, factual allegations were not sufficient to support inference that investments were not suitable independent of Rule 9(b)'s particularity requirements); *Munoz–Mendoza v. Pierce,* 711 F.2d 421, 425 (1st Cir.1983) (if standing is disputed, "[w]here 'injury' and 'cause' are not obvious, the plaintiff must plead their existence in his complaint with a fair degree of specificity.").

A similar tension exists among precedents within and among other circuits. *See McLaughlin v. Anderson,* 962 F.2d 187, 191 (2d Cir.1992) (specificity required in pleading role of act of mail fraud in RICO scheme); *Farlow v. Peat, Marwick, Mitchell & Co.,* 956 F.2d 982, 986–87, 989 (10th Cir.1992) (insufficient specificity of allegation of "connection" with sale of securities; Rule 9(b) requires specificity of "each element of a RICO violation"); *Faulkner Advertising Assoc. v. Nissan Motor Corp.,* 905 F.2d 769, 772 (4th Cir.1990) ("We cannot sustain a complaint which does not allege with reasonable definiteness facts from which the court may infer conduct in restraint of trade of the kind prohibited by the antitrust laws....") (quoting *Nelligan v. Ford Motor Co.,* 262 F.2d 556, 559 (4th Cir.1959)); *Brown v. Texas A & M Univ.,* 804 F.2d 327, 333 (5th Cir.1986) (in civil rights case, "plaintiff must plead specific facts with sufficient particularity to meet all the elements necessary to lay a foundation for recovery"); *Frazier v. Southeastern Penn. Transp. Auth.,* 785 F.2d 65, 67–68 (3d Cir.1986) (in civil rights cases, complaint must state "facts in support of their conclusions" in order to "weed out at an early stage frivolous claims"; level of specificity required to be decided case-by-case) (quoted case citation omitted); *Martin v. Sargent,* 780 F.2d 1334, 1337 (8th Cir.1985) (in prison conditions case, "[a]lthough it is to be liberally construed, a *pro se* complaint must contain specific facts supporting its conclusions"); *Sutliff, Inc. v. Donovan Companies, Inc.,* 727 F.2d 648, 654 (7th Cir.1984) (attaching "bare legal conclusion" to insufficient facts does not prevent dismissal of antitrust claims); *Bryan v. Stillwater Bd. of Realtors,* 578 F.2d 1319, 1321 (10th Cir.1977) (in an antitrust case, "allegations of conclusions or of opinions are not sufficient when no facts are alleged by way of the statement of the claim"). *Compare Early v. Bankers Life & Casualty Co.,* 959 F.2d 75, 79 (7th Cir.1992) ("plaintiff can plead a conclusion ... and then if the conclusion is questioned in a motion or a brief hypothesized facts that if proved would establish it"). *See also Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 149–50 n. 3, 104 S.Ct. 1723, 1725 n. 3, 80 L.Ed.2d 196 (1984) ("intricately detailed description of the asserted basis for relief" is not required); *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,* 459 U.S. 519, 528 n. 17, 103 S.Ct. 897, 903 n. 17, 74 L.Ed.2d 723 (1983) ("Certainly in [an antitrust] case of this magnitude, a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed."); *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957) (complaint need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests").

We turn to a brief explanation of why we conclude that there is apparent tension among these precedents, and also why we conclude that we need not attempt to place the present case as most closely analogous to one or another among these precedents to decide this appeal.

### B. Degrees of Particularity Required in Pleadings

Rule 8(a) of the Federal Rules of Civil Procedure sets forth the general pleading

requirement. A "short and plain statement of the claim showing that the pleader is entitled to relief" is all that is required under the rule. Fed.R.Civ.P. 8(a)(2).

This requirement may aptly be described as minimal. An "intricately detailed description of the asserted basis for relief" is not required. *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 149–50 n. 3, 104 S.Ct. 1723, 1725 n. 3, 80 L.Ed.2d 196 (1984). "The complaint must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' " *Cajigas v. Banco de Ponce*, 741 F.2d 464, 468 n. 12 (1st Cir.1984) (quoting *Welcome Center*, 466 U.S. at 149–50 n. 3, 104 S.Ct. at 1725 n. 3, and *Conley*, 355 U.S. at 47, 78 S.Ct. at 102). This fashion of stating a claim is referred to as "notice pleading." *Id.*

Rule 8(a) embodies a sharp break from the earlier practice of fact pleading. Under fact pleading, it was proper to plead only "ultimate facts." "Evidence" on the one hand, and "conclusions of law" on the other, were both out of bounds. Distinguishing among these classes of allegations proved both difficult and troublesome. Especially troublesome were "traps for the unwary" with respect to conclusions and facts. *See generally* 5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure: Civil § 1218 at 133.

One purpose of breaking from fact pleading was to avoid the specter of technical pleading requirements and focus more squarely on the merits. "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley*, 355 U.S. at 48, 78 S.Ct. at 103. These concerns are relieved in part by the rule that leave to amend "be freely given when justice so requires." Fed.R.Civ.P. 15(a). Nevertheless, if pleading requirements become overly technical, parties may not be able to resist the urge to expend resources unduly on motions to dismiss based on insufficiencies that are cured readily by amendment.

Competing concerns, however, speak in favor of requiring at least some level of "particularity" or "specificity." Though not undertaking a comprehensive catalog, we recite three. First, a complaint that is too general will not "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47, 78 S.Ct. at 103. Accordingly, some distinction must be made between an adequate complaint and one that is too general. Second, rising litigation costs (and the associated impact of an improper threat of litigation) speak for requiring some specificity before permitting a claimant "to drag a defendant past the pleading threshold." *Gooley*, 851 F.2d at 515; *see also Correa–Martinez*, 903 F.2d at 53; *New England Data Services, Inc. v. Becher*, 829 F.2d 286, 289–91 (1st Cir.1987). Third, the burgeoning caseload crisis in the district courts weighs in favor of earlier disposition of baseless claims. *See Sutliff*, 727 F.2d at 654.

1. Tension recognized within the Federal Rules.

The tension between the lure respectively of "notice pleading" and requiring pleading of the factual basis of a claim or defense with "particularity" is reflected within Rules 8 and 9. Rule 8 permits notice pleading and Rule 9 requires that for averments of fraud or mistake, "the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 8(a), 9(b). *See also* Fed.R.Civ.P.Suppl.R. for Certain Adm. & Maritime Claims C(2) (complaint shall "describe with reasonable particularity the property"), E(2)(a) (complaint shall state "the circumstances from which the claim arises with such particularity" that defendant may begin an investigation and frame a responsive pleading). Judicial precedents, however, have extended the scope of application of the heightened specificity requirement well beyond the explicit terms of Rule 9(b). For example, allegations of other elements of a claim associated with fraud, as well as allegations of the fraud itself, must be alleged with specificity. *See, e.g., McLaughlin*, 962 F.2d at 191; *Farlow*, 956 F.2d at 986–

87; *Romani*, 929 F.2d at 878; *Fleming*, 922 F.2d at 23–24; *Data Services*, 829 F.2d at 289–91; *Lefkowitz*, 804 F.2d at 155–56.

In relation to claims of fraud, two subsidiary rules alleviate the burden of pleading with particularity. First, Rule 9(b) specifies that allegations of "[m]alice, intent, knowledge, and other condition of mind may be averred generally." *Cf. Gooley*, 851 F.2d at 515 (using allegation of "actual knowledge" that site was contaminated as an example of an allegation necessary to support plaintiff's claim for unfair business act of failing to disclose the contamination).

Second, when the opposing party is the only practical source for discovering the specific facts supporting a pleader's conclusion, less specificity of pleading may be required pending discovery. Thus, even for a plaintiff's allegations of fraud, if the facts "would be peculiarly within the defendants' control," a court may allow some discovery before requiring that plaintiff plead individual acts of fraud with particularity. *Data Services*, 829 F.2d at 289–92 (must allow some discovery before requiring specificity of pleading mail or wire fraud predicate acts for RICO claim); *compare with Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir.1985) (in securities fraud case, Rule 9(b) "does not permit a complainant to file suit first, and subsequently to search for a cause of action") (quoted case citation omitted).

2. Heightened particularity requirements outside of Rule 9(b).

Even where the particularity requirements of Rule 9 are not remotely applicable, a heightened requirement of specificity is well established for at least two types of allegations. First, greater particularity is required for allegations of civil rights violations. *See, e.g., Correa–Martinez*, 903 F.2d at 53. *See also Brown*, 804 F.2d at 333; *Frazier*, 785 F.2d at 67–68; *Martin*, 780 F.2d at 1337.

No provision of the Federal Rules of Civil Procedure explicitly identifies civil rights cases as a type in which greater specificity of pleading is required. Yet the precedents are many and firm. A civil rights case is reviewed under "the familiar constraints of Fed.R.Civ.P. 12(b)(6)," *Dartmouth Review*, 889 F.2d at 16, but a heightened degree of particularity in the pleadings is required to avoid dismissal. *Correa–Martinez*, 903 F.2d at 52–53 (discussing *Dartmouth Review*). Courts of appeals, however, have commonly required of trial courts something similar to what occurred in this case—an opportunity to cure a deficiency after notice that the trial court had invoked a specificity of pleading requirement. *See, e.g., Garita Hotel*, 958 F.2d at 17–18 & n. 2; *Fleming*, 922 F.2d at 23–24 (affirming dismissal after two amendments).

Heightened particularity is also required for allegations in support of standing. *See AVX Corp.*, 962 F.2d at 115; *Munoz–Mendoza*, 711 F.2d at 425. As with civil rights cases, the standard of judgment for dismissal remains the same, but the specificity of pleading required to avoid dismissal is heightened. *See AVX Corp.*, 962 F.2d at 114–15 & n. 6 (although noting that Rule 12(b)(1) might provide the more appropriate standard for judgment).

Thus, specificity requirements are not limited to cases decided under Rule 9(b) or under Admiralty Rules C(2) and E(2)(a). Rather, the "degree of specificity with which the operative facts must be stated in the pleadings varies depending on the case's context." *AVX Corp.*, 962 F.2d at 115. *See also* 5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure: Civil § 1218 at 139 ("the appropriate level of generality for a pleading depends on the particular issue in question").

3. Level of specificity of pleadings required in this case.

■ A claim of municipal liability under substantive law like that of New Hampshire *may* be a context (like fraud, standing, or civil rights violations) where the balance of competing concerns justifies a heightened particularity requirement. At least in future municipal liability cases in New Hampshire courts, heightened particularity of pleading will be required by statute. *See* N.H.Rev.Stat.Ann. 231:92 II

(1991) (requiring "that the complaint describe[ ] with particularity the means by which the municipality received actual notice of the alleged insufficiency"). *See also Opinion of the Justices,* 592 A.2d at 187 (requirement constitutional because it does no more than "admonish a plaintiff to properly investigate and carefully plead his or her case").

We need not, however, determine whether claims of municipal liability arising out of an accident in a snow storm are of a class in which this circuit will always require, in federal courts, pleading actual notice and opportunity to correct with particularity. Even if heightened particularity is not required for cases of this type as a general rule, the district court may be allowed discretion to impose heightened specificity requirements with fair notice that it is doing so. If "despite multiple opportunities to finetune the complaint, a naked conclusion, unanchored in any meaningful set of factual averments" is the asserted basis for relief, dismissal may follow. *Gooley,* 851 F.2d at 515. "Modern notions of 'notice pleading' notwithstanding, a plaintiff ... is nonetheless required to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Id.* Accordingly, "pleadings are not sufficient where the plaintiff rests on 'subjective characterizations' or unsubstantiated conclusions." *Fleming,* 922 F.2d at 23–24 (internal quotation marks and quoted case citation omitted).

The district court apparently had, as this court has, concerns about "launching the parties into pretrial discovery [with] no reasonable prospect that plaintiff can make out a cause of action from the events narrated in the complaint." *Sutliff,* 727 F.2d at 654. In these circumstances, requiring greater specificity of pleading is not beyond the district court's discretion. *Cf. Associated Gen. Contractors,* 459 U.S. at 528 n. 17, 103 S.Ct. at 903 n. 17 (quoted *supra* ).

Accordingly, if it was error to require specificity of the first amended complaint, the error was harmless in light of B & M's inability, even in its proposed second amended complaint, to comply with the district court's specificity requirements. The district court's action was not a surprise imposition of specificity requirements without cause. Proceedings growing out of the March, 1988 accident had been pending in some court since 1989. B & M had taken some discovery in the state court case. In addition to B & M's claims filed in two separate state court cases, B & M had filed an original and two amended complaints in the federal district court. As explained more fully below, despite notice that the district court was invoking a heightened particularity requirement, B & M still could not present in its proposed second amended complaint any factual basis for actual notice and opportunity to correct. In these circumstances, and without any reasoned basis for believing that B & M will discover any greater factual basis for its complaint than it has already alleged, remanding this case for further proceedings in the district court would be inconsistent with "just, speedy, and inexpensive determination" of this action. Fed.R.Civ.P. 1. *See also Driscoll,* 985 F.2d at 48 ("At the start [of complex litigation], a reasonable basis for belief and an outline of what one might reasonably hope to prove may suffice to permit discovery and ward off premature motions to dismiss. But [the] complaint against [defendant] is deficient; this litigation has persisted for almost two years; and yet even now [claimant] is still unable to explain what exactly it is that [defendant] did that is wrongful.").

## C.  Lack of Factual Basis for Actual Notice and Opportunity to Correct.

1.  Allegations before the court.

In B & M's proposed second amended complaint, B & M added allegations:

7.  On said March 4, 1988 snow had fallen consistently throughout the day and snow and ice had accumulated on the Exeter Road at and near the aforementioned bridge, prior to ... Lynch's accident.

8. The ongoing snow storm and accumulation of snow provided actual notice to the Defendant Town of Hampton of the unsafe condition of the Exeter Road and the bridge, prior to ... Lynch's accident.

9. The Town of Hampton plowed and sanded the Exeter Road on March 4, 1988 prior to Jeanne Lynch's accident for the purpose of clearing snow and ice accumulation of which it was aware.

. . . .

25. The Town had actual notice of snowy, icy, and otherwise unsafe conditions of the roadway and bridge, as evidenced by the facts [sic] that snow was falling throughout the day of this accident and by the fact that the Town had undertaken to plow and sand the Exeter Road for the purpose of clearing accumulated snow and ice.

26. The Town had actual notice that the bridge was in a [sic] unsafe condition.

27. The Defendant had adequate opportunity to correct this unsafe condition.

Accordingly, in addition to general allegations of "actual notice of snowy, icy, and otherwise unsafe conditions" and "adequate opportunity to correct this unsafe condition," B & M alleged in its proposed second amended complaint that (1) there was a snow storm, (2) snow and ice had accumulated before Lynch's accident, and (3) Hampton plowed and sanded.

■ As a preliminary matter, we consider whether the allegations in B & M's proposed second amended complaint, filed after the district court's entry of dismissal and final judgment, are properly before this court. If B & M's motion to reconsider and its proposed amended complaint clarified or cured "an otherwise fatal ambiguity in [the] complaint," outright dismissal should not "ordinarily be perpetuated" by either a district or appellate court. *Garita Hotel*, 958 F.2d at 18 n. 2; *see Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). On the other hand, if the proposed amendment would be futile because, as thus amended, the complaint still fails to state a claim, the district court

acts within its discretion in denying the motion to amend. *See Foman*, 371 U.S. at 182, 83 S.Ct. at 230; *Correa–Martinez*, 903 F.2d at 59. Because we conclude that the district court's ruling is supportable on the ground that the proposed second amendment was insufficient, we assume in B & M's favor that the allegations contained in the proposed second amendment are before this court as fully and effectively as if the district court had allowed the amendment and then dismissed the amended complaint.

2. Definition of actual notice and opportunity to correct under New Hampshire law.

■ To determine whether B & M has alleged any minimal factual basis for satisfying the legal requirements of actual notice and opportunity to correct a hazardous condition, we must examine what is meant by "actual notice" under New Hampshire law.

In the circumstances of this case (as alleged by B & M), we conclude that actual notice and opportunity to correct require notice of the specific time, place, and nature of the hazard (*i.e.* of the specific hazardous condition) at a time sufficiently in advance of the accident to allow an opportunity to correct the problem. B & M acknowledges that snow clearing was taking place and that the bridge had been plowed before Lynch's accident. Given the snow clearing operations, Hampton could not have known of a specific hazardous condition on or near the bridge (even assuming Hampton is charged with knowledge of snow fall) without some further actual notice specific to the area on and near the bridge. Under the facts as averred by B & M, Hampton had notice of the snow, but in view of Hampton's snow clearing operations, this falls far short of supporting an inference that Hampton (1) had knowledge of some particular hazard on or near the bridge, different from the conditions prevailing throughout the town in the midst of an ongoing storm, and (2) had that knowledge in time to take effective corrective action.

This interpretation is consistent with New Hampshire case law. In *Opinion of the Justices,* discussed in Section II, *supra,* the court considered an argument that it would be unconstitutional to "cloak municipalities with immunity when they have no actual knowledge of an insufficiency, even though, in light of facts readily available to them, they should have known of it." 592 A.2d at 186. The court rejected this argument, "because *City of Dover* plainly limits a municipality's liability to instances of *actual,* not *constructive,* knowledge." *Id.* (citation omitted). *See also Moaratty v. Hampton,* 110 N.H. 479, 272 A.2d 606, 608 (1970) (reversing jury verdict against town in case for damages in heavy rain storm allegedly caused by the town's negligent maintenance of drainage system; concluding that "[e]ven if it could be found that the piece of wood caused a blockage [in a drainage pipe], there was no evidence from which it could be found that the town had actual notice of its presence or that an obstruction had existed for such a length of time as to charge the town with such knowledge").

3. B & M presents no basis for concluding Hampton had actual notice and an opportunity to correct.

■ B & M's allegation of the conclusion that Hampton had actual notice is similar to pleading the conclusion that Hampton had actual "knowledge" of the hazard because pleading and proving that Hampton had actual knowledge of a specific hazard would satisfy the substantive law requirement of actual notice. *See Opinion of the Justices,* 592 A.2d at 186.

Even if we were to assume, however, that B & M's general averment of actual notice is sufficient to plead knowledge of a hazard, other elements of B & M's pleading obligations, with respect to actual notice, remain to be considered. To prevail in this case, B & M must also establish that it (1) has adequately *identified* some "hazard" and (2) has adequately pled an opportunity to correct that hazard.

■ Opportunity to correct a hazardous condition necessarily depends on (1) an identification of what factual circumstances were alleged to constitute a "hazardous condition," (2) the timing of actual notice or knowledge of the hazardous condition, and (3) the factual circumstances supporting the conclusion that the municipality had the ability to commit resources to snow removal at that place and at that time. B & M makes no allegations concerning (3), and only sparse allegations, if any at all, regarding (1) and (2).

B & M's general allegation of notice is insufficient to plead notice with sufficient time and opportunity to respond. Hampton had no "opportunity" to respond unless one or more of its representatives, with requisite authority to make a decision about how to react, had notice of the hazard with sufficient time before Lynch's accident to permit taking steps that would be effective to "correct the problem." B & M makes no allegation of *when* any identifiable representative of Hampton had actual notice. Moreover, when pressed at oral argument, B & M could not identify any specific point in time when any *specific* hazard existed, other than the moments before Lynch's accident. Counsel did refer to plowing of the bridge that stopped at noon, but B & M does not claim that any specific hazard existed at the point in time just after the bridge was plowed (or that the town was aware of any specific hazard at that time). If counsel cannot specify when the hazard arose, it is difficult to imagine that counsel can have a good faith basis for alleging that Hampton had actual notice of that hazard an appreciable period of time before the accident.

■ B & M asserts that it was sufficient to plead that (1) it was snowing, (2) a hazard existed at the bridge some time before the accident, and (3) Hampton plowed the bridge before the accident. As to (2), even if the bridge is assumed to have been hazardous at the time of the accident, this alone cannot support an inference either that Hampton knew of the hazard or that Hampton had an opportunity to correct that problem before the accident. *See, e.g., Moaratty,* 272 A.2d at 608.

■ With respect to (1), for the reasons explained in Part C.2, *supra,* mere knowl-

edge of snow fall is not even a minimal factual basis for B & M's general allegation that Hampton had the opportunity to correct the specific hazard allegedly causing Lynch's accident. Similarly, B & M's argument that Hampton's plowing the bridge establishes notice of the hazard must also be rejected. Undertaking to plow the bridge might establish actual notice of snow fall in general, but cannot support an inference of knowledge of the specific hazard that allegedly caused Lynch's accident, with sufficient time and opportunity to correct that problem.

Finally, we observe that the result we have reached is required for consistency with the manifest purpose of the law-making entities of New Hampshire—the New Hampshire legislature and Supreme Court—in their various declarations of limits on the scope of municipal liability. Under B & M's theory, alleging that Hampton arranged for plowing the roads is enough factual basis for pleading that Hampton had actual notice and an opportunity to correct all hazards on every road in the municipality. If B & M's allegations were sufficient, every town in New Hampshire would be vulnerable to litigation for every car accident occurring during every snow storm severe enough that the municipality committed resources to snow plowing.

In sum, even B & M's proposed second amended complaint does not state a claim against Hampton with even minimal particularity. Both the complaint and B & M's argument demonstrate that the only basis B & M could assert in good faith for the general allegations of actual notice and opportunity to respond was that it was snowing, the road was icy, and the town was plowing. This does not constitute even a minimal factual basis for the conclusions of actual notice and opportunity to correct a particular hazard that led to a particular accident.

*D. Discovery or Further Amendment.*

The generality of B & M's allegation of opportunity to correct might have been permissible if the facts concerning this allegation had been within the exclusive control of defendant. If that had been

the case, perhaps limited discovery would have been appropriate. *See Data Services,* 829 F.2d at 291–92. We need not decide that issue here. This controversy has been pending in some court since 1989. The record demonstrates that B & M took at least some discovery in state court. B & M does not suggest what further facts discovery might plausibly uncover. Accordingly, we see no just reason for remanding this case for discovery on the limited issue of notice and opportunity to correct. *See Driscoll,* 985 F.2d at 48.

B & M also requests that it be allowed an opportunity to further amend the complaint. B & M does not specify, however, what additional allegations it has a good faith basis to add. B & M filed three complaints in the district court in addition to claims in state court. Even after notice that the district court would require minimal particularity of pleading of actual notice and opportunity to correct, B & M apparently failed to find a good faith basis to make even minimally sufficient allegations that would support its claims. We see no just reason for allowing further attempts to amend the complaint.

The district court's final judgment of dismissal is affirmed.