Quimby v. DCYS                    CV-93-351-B    03/31/94

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


<u>Robert W. Quimby, as Administrator of
the Estate of Christal Quimby</u>

    v.                                    Civil No. 93-351-B

<u>Division for Children and Youth
Services, Robert Pidgeon, Loreli
Duquette and Mimi Wheeler</u>


**O R D E R**


Robert W. Quimby, Administrator for the Estate of Christal Quimby (the "Administrator") brings this action pursuant to 42 U.S.C. § 1983 and state negligence law on behalf of his deceased daughter. Defendants are the New Hampshire Bureau of Children, Division for Children and Youth Services ("DCYS"), Robert Pidgeon, the Deputy Director of DCYS, and the three caseworkers primarily responsible Christal's care: Loreli Duquette, Wendy Robertson and Mimi Wheeler. The defendants move to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the following reasons, I grant the defendants' motion.

## I.  BACKGROUND[1]

Christal's parents were divorced in 1982.   The parents retained joint legal custody of their three children, but the children's mother, Karen Downs, was awarded physical custody.   In 1989, Downs was accused of neglect and the three children were placed in a foster home in Dover, New Hampshire under the supervision of DCYS.   Immediately thereafter, Somersworth District Court awarded legal custody to DCYS.   Pursuant to Duquette's recommendation, the Court placed the two girls with their maternal grandmother, and their brother with Mr. Quimby. Shortly after being placed with their grandmother, the two girls fled to Pennsylvania, but were apprehended by local police and returned to New Hampshire.   The court then placed the girls in a shelter for six weeks.

After a hearing on November 28, 1989, the Court allowed DCYS to remove the girls from the shelter and place them in a foster home run by Christian Telles and his wife.   Plaintiff alleges that, at the time the girls were placed with Telles, he was "unemployed and had no driver's license due to being declared a habitual offender in 1985."   Plaintiff further alleges that

_____

[1]**I draw the facts from the complaint and describe them in the light most favorable to the plaintiff.**

"Telles also had a criminal record, was an admitted alcoholic and drug user and was a former member of the Hell's Angels motorcycle gang."

After the two girls were placed in the Telles' home, no DCYS workers visited them until approximately six months later when Coreen Quimby requested a meeting with a social worker. At the meeting, she told Robertson that "she was very unhappy and wanted to resume living with her grandmother." Two months later, the district court granted her request. DCYS never visited Christal after Coreen left.

Shortly after Coreen went to stay with her grandmother, Telles began to have sexual relations with Christal, who was then fourteen years old. In February 1991, Christal found out she was pregnant. Based on Christal's statements, her caseworkers concluded that Telles was the father. Accordingly, they immediately removed Christal from the Telles' residence and placed her in another foster home.[2] In October, Quimby delivered a stillborn fetus. Afterwards, she returned to live with her natural mother.

---

[2]Telles has since been convicted of felonious sexual assault and is serving a sentence of seven and one-half to fifteen years in the New Hampshire State Prison.

As a result of the pregnancy and miscarriage, Christal and her mother underwent several months of psychological counselling. In April 1992, Christian Telles contacted Christal in violation of a protective order. In August, he persuaded her to travel with him to an unknown destination. En route, they were involved in an automobile accident and Christal was killed.

On June 24, 1993, the Administrator brought this suit in Rockingham County Superior Court on behalf of Christal's estate. The Administrator alleged that the defendants negligently injured Christal by

> failing to adequately investigate Christian Telles' background and criminal history prior to and after the placement of the Quimby girls with him; by negligently placing Christal Quimby with an unfit foster parent; by failing to adequately follow up on Christal Quimby's placement at the Telles' foster home, and; by failing to make regular scheduled and unscheduled visits to Christal Quimby at the Telles' foster home.

The Administrator also brought § 1983 claims against the defendants in their individual capacities, alleging that they were "grossly negligent" and had demonstrated a "callous disregard for and deliberate indifference" to plaintiff's Due Process rights in that they

> failed to adequately investigate the background of Christian Telles, failed to investigate all warning signals which indicated an unusual and abnormal relationship between Christian Telles and Christal

4

Quimby, failed to perform periodic reviews of the qualifications and criminal record of Christian Telles, and failed to supervise and oversee the placement of Christal Quimby in the Telles' foster home.[3]

The Administrator seeks damages for mental distress, pain and suffering, medical bills and other unspecified injuries, as well as attorney's fees. As the § 1983 claim arises under federal law, Duquette invoked this Court's federal question jurisdiction under 28 U.S.C. § 1331 and removed the action pursuant to 28 U.S.C. §§ 1441 and 1446.

## II.  DISCUSSION

### A.  Standard of Review

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) requires the court to review the allegations of the complaint in the light most favorable to plaintiff, accepting all material allegations as true, with dismissal granted only if no set of facts entitles plaintiff to relief. See, e.g., Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Berniger v. Meadow Green-Wildcat Corp., 945 F.2d 4, 6 (1st Cir. 1991); Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989).

---

[3]Plaintiff does not claim that any of the defendants violated Christal's constitutional rights after they removed her from the Telles' home.

Notwithstanding the liberal requirements of notice pleading and the deferential reading of a litigant's complaint required under Rule 12(b)(6), a district court must ensure that "each general allegation be supported by a specific factual basis." Fleming v. Lind-Waldock & Co., 922 F.2d 20, 23 (1st Cir. 1990). Thus, a district court need not accept subjective characterizations, bald assertions, or unsubstantiated conclusions. See Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52-53 (1st Cir. 1990); Dewey v. University of New Hampshire, 694 F.2d 1, 3 (1st Cir. 1982), cert. denied, 461 U.S. 944. Moreover, while "the line between 'facts' and 'conclusions' is often blurred," Dartmouth Review, 889 F.2d at 16, the line must be drawn. For

> [i]t is only when such conclusions are logically compelled, or at least supported, by the stated facts, that is, when the suggested inference rises to what experience indicates is an acceptable level of probability that "conclusions" become "facts" for pleading purposes.

Id.; see Fleming, 922 F.2d at 24; Correa-Martinez, 903 F.2d at 53.

Care is required in determining the sufficiency of a complaint to insure that "heightened pleading" requirements are invoked only if such requirements are specifically authorized by

6

the Federal Rules of Civil Procedure.  See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 113 S. Ct. 1160, 1163 (1993) (comparing Fed. R. Civ. P. 8(a)(2)'s general pleading requirement with the particular pleading requirement of Fed. R. Civ. P. 9(b) and holding that a heightened pleading standard does not apply to civil rights claims).  However, even under the general pleading requirements of Fed. R. Civ. P. 8(a), a complaint will not withstand a motion to dismiss if the plaintiff has merely recited the elements of the complaint's causes of action in conclusory terms.  Fleming, 922 F.2d at 24. Notice pleadings require factual allegations which, if true, will establish all of the required elements of plaintiff's causes of action.  Moreover, where it is evident from plaintiff's response to a motion to dismiss that the complaint cannot be amended to allege such facts, a court may deny the plaintiff leave to amend and dismiss the complaint.  Boston & Maine Co. v. Hampton, 987 F.2d 855, 868 (1st Cir. 1993).

B. Application[4]

In Daniels v. Williams, the Supreme Court held that the Due Process Clause of the Fourteenth Amendment "is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." 474 U.S. 327, 328 (1986). See also Davidson v. Cannon, 477 U.S. 344, 347 (1986). In reaching this holding, the Court noted that due process guarantees have historically been applied to "deliberate decisions of government officials to deprive a person of life, liberty, or property," and reasoned from this that the Due Process Clause was "intended to secure the individual from the arbitrary exercise of the powers of government." Daniels, 474 U.S. at 331 (quoting Hurtado v. California, 110 U.S. 516, 527 (1884) (quoting Bank of Coulumbia v. Okely, 4 Wheat (17 U.S.) 234, 244 (1819))). The Court then determined that negligent conduct was too remote from these traditional concerns, stating:

> [f]ar from an abuse of power, lack of due
> care suggests no more than a failure to
> measure up to the conduct of a reasonable

---

[4]I assume for purposes of discussion that a "special relationship" existed between Christal and DCYS. See Estate of Gilmore v. Buckley, 787 F.2d 714, 720-721 (1st Cir. 1986), cert. denied, 479 U.S. 882. This order thus focuses solely on whether plaintiff's state of mind allegations, if believed, are sufficient to sustain a § 1983 action.

> person. To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law.

Daniels, 474 U.S. at 332.  The Court, however, left open the question whether something less than intentional conduct, but more than mere negligence, could trigger due process protections. Id. at 334 n.3.

This Circuit has stepped into the breach and held that "government officials may be held liable for a deprivation of life, liberty, or property without due process if their conduct reflects a reckless or callous indifference to an individual's rights."  Germany v. Vance, 868 F.2d 9, 17-18 (1st Cir. 1989); Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 91 (1st Cir. 1994)); Torres Ramirez v. Bermudez Garcia, 898 F.2d 224, 227 (1st Cir. 1990); Landol-Rivera v. Cruz Cosme, 906 F.2d 791, 796 (1st Cir. 1990).  The First Circuit has found that it is

> appropriate to view 'reckless or callous indifference' not as a heightened degree of negligence (akin to 'gross negligence'), but rather as a lesser form of intent.  An intentional violation of a person's constitutional rights occurs if the official desires to cause such a violation or believes that his or her conduct is certain to result in such a violation. A recklessly or callously indifferent violation occurs, in contrast, if the official believes (or

9

> reasonably should believe) that his or her
> conduct is very likely (but not certain) to
> result in such a violation.

Germany, 868 F.2d at 18 n.10; see Torres Ramirez, 898 F.2d at 227; Febus-Rodriguez, 14 F.3d at 91.  The mere presence of risk does not amount to reckless or callous indifference to an individual's constitutional rights.  Landol-Rivera, 906 F.2d at 797.

Here, Counts I-V of the plaintiff's complaint allege state law negligence claims against DCYS and against Pidgeon, Robertson, Duquette and Wheeler in both their individual and official capacities.  The plaintiff alleges that the defendants breached the duty of care they owed to Christal in five respects. First, plaintiff asserts that the defendants failed to adequately investigate Christian Telles' background.  Second, he contends that the defendants failed to investigate "all warning signals" which indicated an unusual and abnormal relationship between Telles and Christal.  Third, plaintiff claims that the defendants failed to conduct periodic reviews of the Telles' foster home. Fourth, he maintains that the defendants failed to perform periodic reviews of Christian Telles' qualifications and criminal record.  Fifth, plaintiff argues that the defendants failed to supervise and oversee Christal's placement in the Telles' foster

10

home.

Counts VI-IX of the complaint differ from the negligence counts only in that they assert § 1983 claims against defendants in their individual capacities and include the additional statement that the negligent acts alleged "demonstrate a callous disregard for and deliberate indifference to [Christal's] civil rights." Although the plaintiff thus attempts to invoke § 1983 by claiming that defendants acted with "callous disregard" and "deliberate indifference," the complaint's supporting factual allegations amount to no more than mere negligence.[5] Therefore, as I describe in detail in the following sections, these allegations are not sufficient to support plaintiff's § 1983 claims.

1. **Caseworkers**

As can be seen from the legal standard set forth above, a defendant acts with "reckless or callous indifference" only if "[he or she] believes (or reasonably should believe) that his [or her] conduct is very likely (but not certain)" to violate a

---

[5]Although I use the phrase "mere negligence" I do not intend to trivialize the tragic events that gave rise to this action. Rather, I use the phrase to draw a distinction between the conduct alleged in the complaint and that required to invoke the protections of § 1983.

person's constitutional rights. <u>Germany</u>, 868 F.2d at 18. This is precisely what is lacking in plaintiff's complaint.

The most compelling of plaintiff's allegations is that the defendants failed to investigate all warning signals indicative of an abnormal or inappropriate relationship between Christal and Christian Telles. In support of this conclusion, the plaintiff offers the fact that Coreen Quimby asked to be removed from the Telles' foster home because she was unhappy and wanted to live with her grandmother. Yet plaintiff does not claim that Coreen informed DCYS caseworkers, or anyone else, of inappropriate conduct by Christian Telles. As a result, these allegations fail to sufficiently allege that the caseworkers were made aware of facts that would have caused reasonable persons in their positions to conclude that it was very likely that harm would come to Christal if she remained in Telles' custody.

The plaintiff's remaining allegations do not assert that DCYS caseworkers had any knowledge, notice, or awareness of Christian Telles' unfitness as a foster parent or Christal's precarious situation. Rather, plaintiff's complaint can be characterized as asserting failures to perform certain duties that "would" have given rise to notice or knowledge that Christian Telles was an unfit foster parent and that Christal's

12

well-being was in jeopardy.  Although the conduct alleged exemplifies a lack of due care, and possibly even gross negligence, it does not rise to the level of reckless or callous indifference that is required to state a cognizable constitutional violation of the Due Process clause.

### 2.  **Deputy Director Pidgeon**

The nature of the plaintiff's complaint against Pidgeon is that he breached his legal duty of care to Christal by failing to adequately train and supervise the caseworkers responsible for her well-being.  However, a supervisor cannot be held liable on a respondeat superior theory.  <u>Febus-Rodriguez</u>, 14 F.3d at 91-92. (citing <u>Gutierrez-Rodriguez v Cartagena</u>, 882 F.2d 553, 562 (1st Cir. 1989)).  Instead, "[a] supervisor may be found liable only on the basis of his own acts or omissions."  <u>Id.</u>  In addition, "there must be an 'affirmative link' between the supervisory official's acts or omissions and his subordinate's violation of the plaintiff's constitutional rights."  <u>Id.</u> at 93.  Therefore, in the present case, Pidgeon's acts or omissions must qualify as reckless or callous indifference and there must be an affirmative link between these acts or omissions and the caseworkers' violation of Christal's constitutional rights.

13

Like the § 1983 counts against the caseworkers, the factual allegations of the § 1983 count against Pidgeon support nothing more than negligence or gross negligence. The critical factor in my determination is that there are no allegations in the complaint from which I can reasonably infer that Pidgeon had any degree of knowledge, notice, or awareness of facts that would have caused a reasonable person in his position to conclude that his acts or omissions were very likely to violate Christal's constitutional rights. As such, the count against Pidgeon fails to adequately allege "reckless or callous indifference."[6]

[6]In addition to the factual averments contained in the complaint, the plaintiff has included supplemental factual allegations in his pleadings and affidavits. The proper method to include these additional allegations is through a motion to amend the complaint, which the plaintiff has failed to do. The allegations recount a dissatisfaction with Telles' foster home that was communicated to a guardian ad litem and an aunt by two children in the Telles' care. Although the children's complaints were allegedly conveyed to unnamed DCYS officials, plaintiff does not allege that any of the named defendants were aware of or received notice of these concerns. Plaintiff also proffers the fact that Christian Telles gave Christal a leather coat as a gift to support his claim that the two enjoyed an unusually close relationship. However, plaintiff does not contend that the defendants were even aware of this gift.

As set forth in this order, it is the degree of the defendants' notice, knowledge, or awareness that is the essential link in showing reckless or callous indifference. These supplemental factual claims fail to provide any additional support for the contention that the defendants had any degree of awareness that their acts or omissions would violate Christal Quimby's constitutional rights. Nor do the facts establish that

15

C.  Pendent State Claims

Having disposed of plaintiff's federal claims, I decline to exercise my discretion to retain supplemental jurisdiction over the remaining state claims.  28 U.S.C. § 1367(C)(3); Blake v. Dickason, 997 F.2d 749 (10th Cir. 1993).  Accordingly, these claims are remanded to state court.


## III.  CONCLUSION

Based on the foregoing, the defendants' Rule 12(b)(6) motion to dismiss (document no. 4) is granted insofar as the motion applies to plaintiff's 42 U.S.C. § 1983 claim.  Plaintiff's pendent state claims are remanded to state court.

The clerk is instructed to issue judgment for the defendant in accordance with this order.

---

the defendants were aware of facts that reasonably should have caused them to believe that Telles was very likely to injure Christal if she was not removed from his home.  As such, granting leave for plaintiff to amend his complaint to include these facts would be futile, as he would not be able to state a valid § 1983 claim.  See Boston & Maine Co., 987 F.2d at 868 (recognizing that leave to amend need not be allowed where the proposed amendment would be futile).

16

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

March 31, 1994

cc:  Michael P. Rainboth, Esq.
     Nancy J. Smith, Esq.