Request of the Senate
No. 91-157

# OPINION OF THE JUSTICES

May 28, 1991

268

The following Resolution No. 6, requesting an opinion of the justices, was adopted by the Senate on April 16, 1991, and filed with the Supreme Court on April 18, 1991:

"Whereas, there is pending in the senate, SB 151-FN, 'An act to protect municipalities against liability in the construction and maintenance of highways, streets and sidewalks'; and

"Whereas, an amendment has been proposed to SB 151-FN; and

"Whereas, RSA 231:90 as proposed by SB 151-FN as amended would provide a method by which any person may give notice, to a municipality, of a class IV or class V highway's insufficiency and would establish the criteria by which such highway would be considered 'insufficient'; and

"Whereas, RSA 231:91 as proposed by SB 151-FN as amended sets out the municipality's duty to act upon receipt of such a notice and the liability of such municipality for failure to act in certain instances; and

"Whereas, RSA 231:92 as proposed by SB 151-FN as amended would establish when a municipality may be liable for damages arising out of its construction, maintenance, or repair of public highways and sidewalks constructed on such highways and would establish a municipality's standard of care for such highways and sidewalks; and

"Whereas, RSA 231:92-a as proposed by SB 151-FN as amended would limit a municipality's liability for damages arising from hazards caused by snow, ice or other inclement weather; and

"Whereas, RSA 231:93 as proposed by SB 151-FN as amended would redefine when a municipality would be immune from liability for damages suffered upon certain classes of highways to public waters; and

"Whereas, doubt has arisen as to the constitutionality of the provisions of said bill as amended; and

"Whereas, it is important that the question of the constitutionality of said provisions should be settled in advance of its enactment; now, therefore, be it

"Resolved by the senate:

"That the justices of the supreme court be respectfully requested to give their opinion on the following questions of law:

1. Would enactment of SB 151-FN, as amended, result in an arbitrary or discriminatory infringement on access to the courts in violation of Part I, Article 14 of the New Hampshire Constitution?

2. Would enactment of SB 151-FN, as amended, taking into account the benefits conferred upon the general public in limiting the liability of municipalities, result in unreasonable or arbitrary restrictions on the rights of an injured person to recover in violation of Part I, Articles 2 and 12 of the New Hampshire Constitution?

3. Would any other provision of the New Hampshire Constitution be violated by the enactment of SB 151-FN, as amended?

"That the clerk of the senate transmit copies of this resolution and SB 151-FN and the proposed amendment to the justices of the supreme court."

The following response is respectfully returned:

*To the Honorable Senate:*

The undersigned justices of the Supreme Court now submit the following replies to your questions of April 16, 1991. Following our receipt of your resolution on April 18, 1991, we invited interested parties to file memoranda with the court on or before May 9, 1991.

Senate Bill (SB) 151-FN is a response to this court's decision in *City of Dover v. Imperial Cas. & Indemn. Co.*, 133 N.H. 109, 575 A.2d 1280 (1990), in which we declared RSA 507-B:2, I, unconstitutional. That statute rendered municipalities immune from liability for injuries caused by faulty maintenance of public sidewalks, streets, or highways, and had few exceptions. *See* RSA 231:90 (municipality liable if it fails to respond to formal notice of hazard signed by three persons in the State); RSA 231:92 (municipality liable for damages occurring on bridges, culverts, sluiceways, and embankments unsuitable for travel); RSA 412:3 (municipality liable to the extent it has insurance coverage). We declared in *City of Dover* that "municipal immunity, as a judicially created doctrine, no longer exists," 133 N.H. at 115, 575 A.2d at 1283, and then concluded that RSA 507-B:2, I, "violates equal protection provisions found in part I, articles 2 and 12 of the State Constitution by impermissibly denying parties injured on municipal highways and sidewalks a right to recover as provided in part I, article 14." *Id.* at 120, 575 A.2d at 1286–87.

We also provided the legislature with some guidance in the event it wished to replace RSA 507-B:2, I, and "place reasonable limits on the right to recovery." *Id.* at 120, 575 A.2d at 1286.

> "A statute which is tailored to protect the interests of communities when they have no notice of a problem or when they have inadequate opportunity to respond to a known problem may meet constitutional requirements. But, when a community has actual notice of a hazardous condition on its highways or sidewalks and has had adequate opportunity to correct the condition, protect travelers from injury, or warn public users of the hazard, those injured as a result should not be denied an opportunity to recover."

*Id.* at 120, 575 A.2d at 1286. SB 151-FN is a comprehensive answer to *City of Dover*, with an avowed purpose of "provid[ing] municipalities with the greatest possible protection from highway and sidewalk liability, consistent with the [C]onstitution."

The heart of SB 151-FN is proposed RSA 231:92, "Liability of Municipalities; Standard of Care." It reads:

"I. A municipality shall not be held liable for damages in an action to recover for personal injury or property damage arising out of its construction, maintenance, or repair of public highways and sidewalks constructed thereupon unless such injury or damage was caused by an insufficiency, as defined by RSA 231:90, and:

(a) The municipality received a written notice of such insufficiency as set forth in RSA 231:90, but failed to act as provided by RSA 231:91; or

(b) The municipal officers responsible for maintenance and repair of highways had actual notice or knowledge of such insufficiency, by means other than written notice pursuant to RSA 231:90, and were grossly negligent or exercised bad faith in responding or failing to respond to such actual knowledge; or

(c) The condition constituting the insufficiency was created by an intentional act of a municipal officer or employee acting in the scope of his official duty while in the course of his employment, acting with gross negligence, or with reckless disregard of the hazard."

Proposed RSA 231:90, II states that:

"a highway shall be considered 'insufficient' only if:

(a) It is not passable in any safe manner by those vehicles permitted on such highway by state law or by any more stringent local ordinance or regulation; or

(b) There exists a safety hazard which is not reasonably discoverable or reasonably avoidable by a person who is traveling upon such highway at posted speeds, in obedience to all posted regulations, and in a manner which is reasonable and prudent as determined by the condition and state of repair of the highway, including any warning signs, and prevailing visibility and weather conditions."

The written notice which triggers liability in proposed RSA 231:92, I(a) is described in proposed RSA 231:90, I:

"Whenever any class IV or class V highway or bridge thereon in any municipality shall be insufficient, any person may give written notice of such insufficiency to one of the

selectmen or highway agents of the town, or the mayor or street commissioners of the city, and a copy of said notice to the town or city clerk. The notice shall be signed and shall set forth in general terms the location of such highway and the nature of such insufficiency."

Proposed RSA 231:91, I, then provides:

"Upon receipt of such notice of insufficiency, and unless the highway agents or street commissioners determine in good faith that no such insufficiency exists, the municipality shall immediately cause proper danger signals to be placed to warn persons by day or night of such insufficiency, and shall, within 72 hours thereafter, develop a plan for repairing such highway or bridge and shall implement such plan in good faith and with reasonable dispatch until the highway or bridge is no longer insufficient, as defined by RSA 231:90, II."

SB 151-FN also includes a special provision relating to weather-related hazards. Proposed RSA 231:92-a reads:

"Notwithstanding RSA 231:90–92, a municipality shall not be held liable for damages arising from public highway insufficiencies or hazards, even if it has actual notice or knowledge of them, when such hazards are caused by snow, ice, or other inclement weather, and the municipality's failure or delay in removing or mitigating such hazards is the result of its implementation, absent wilful or wanton negligence or recklessness, of a winter or inclement weather maintenance policy or set of priorities adopted in good faith by the officials responsible for such policy; and all municipal employees and officials shall be presumed to be acting pursuant to such a policy or set of priorities, in the absence of proof to the contrary."

In addition, SB 151-FN contains the following provisions. Proposed RSA 231:90, III, states that a highway shall not be considered "insufficient" merely because the municipality does not "construct, maintain or repair it to the same standard as some other highway, or to a level of service commensurate with its current level of public use." Proposed RSA 231:91, II provides that if a municipality fails to respond to a notice of insufficiency as set forth in RSA 231:91, I, "it shall be liable in damages for all personal injury or property damage proximately caused by the insufficiency identified in the notice, subject to the liability limits under RSA 507-B:4."

Paragraph II of proposed RSA 231:92 requires any complaint filed under proposed RSA 231:90–92-a to "describe[ ] with particularity the means by which the municipality received actual notice of the alleged insufficiency, or the intentional act which created the alleged insufficiency." Paragraph III of the same section reads: "The acceptance or layout of a private road as a public highway shall not be construed to confer upon the municipality any notice of, or liability for, insufficiencies or defects which arose or were created prior to such layout or acceptance." And paragraph IV deems "[t]he setting of construction, repair, or maintenance standards" to be a "discretionary, policy function for which the municipality shall not be held liable in the absence of malice or bad faith."

Proposed RSA 231:93 declares that "[m]unicipalities shall not be deemed to have any duty of care whatsoever with respect to the construction, maintenance or repair of class I, III or VI highways, or state maintained portions of class II highways, or highways to public waters laid out by a commission appointed by the governor and council." Proposed RSA 412:3 provides:

"In any action against the state or any municipal subdivision thereof to enforce liability on account of a risk so insured against, the insuring company or state or municipal subdivision thereof, shall not be allowed to plead as a defense immunity from liability for damages resulting from the performance of governmental functions, and its liability shall be determined as in the case of a private corporation except when a standard of care differing from that of [a] private corporation is set forth by statute . . . ."

Finally, proposed RSA 507-B:2 states in pertinent part: "the liability of any governmental unit with respect to its sidewalks, streets, and highways shall be limited as provided in RSA 231."

Your first question asks whether SB 151-FN would violate part I, article 14 of the New Hampshire Constitution, while your second question asks whether it would violate part I, articles 2 and 12. We held in *Carson v. Maurer*, 120 N.H. 925, 931–32, 424 A.2d 825, 830 (1980) that the right to recover for one's injuries, as provided in part I, article 14, is an "important substantive right," and that "restrictions imposed on [that] right[ ] [must] be subjected to a more rigorous judicial scrutiny than allowed under the rational basis test." Because the right to recover was not deemed a "fundamental right," *id.* at 932, 424 A.2d at 830, a middle-tier, "substantial relation" test was employed to analyze the statute at issue, *id.* at 931, 424 A.2d at 831.

■ *Carson* involved a law which restricted the rights of medical malpractice victims to recover for their non-economic losses in excess of $250,000. The plaintiffs claimed that the statute discriminated against the most severely injured victims, and an equal protection analysis was used to determine the statute's constitutionality. *Id.* at 941, 424 A.2d at 836–37. Since *Carson*, this court has not had the opportunity to judge whether a law violates part I, article 14 *directly*, rather than *indirectly* under an equal protection analysis. *See Estate of Cargill v. City of Rochester*, 119 N.H. 661, 667, 406 A.2d 704, 707 (1979). However, because the right to recover for one's injuries is an "important substantive right," *see Carson*, 120 N.H. at 931–32, 424 A.2d at 830, the middle-tier "substantial relation" test should be used to judge both direct and indirect violations of that right.

■ Moreover, when no suspect classification is involved in an equal protection analysis, such as race or national origin, *see* pt. I, art. 2, and the statute at issue is held to violate equal protection because one group's right to recover is violated while another's is not, it follows that the statute also *directly* violates the right to recover. *Cf. Estate of Cargill supra* (where statute does not directly violate part I, article 14, statute cannot violate provisions indirectly under guise of equal protection analysis). Your first question, which asks whether SB 151-FN would violate the right to recover *directly*, is encompassed in the second question, which couches the same issue in terms of equal protection. Thus, answering both questions would mean performing two overlapping analyses of the same bill, each involving part I, article 14, and each employing the "substantial relation" test. For the sake of brevity, then, we choose to address only your second question.

■ The undersigned justices answer your second question in the negative, with two qualifications. Before we analyze SB 151-FN paragraph-by-paragraph, we reiterate the criteria we set forth in *City of Dover* to determine a statute's constitutionality. We stated that because of the peculiar nature of public highways and sidewalks, a municipality need not "satisfy an ordinary negligence standard with respect to the ownership and maintenance of highways and sidewalks," *City of Dover*, 133 N.H. at 118, 575 A.2d at 1285, but that "when a community has *actual notice* of a hazardous condition on its highways or sidewalks and has had *adequate opportunity* to correct the condition, protect travelers from injury, or warn public users of the hazard, those injured as a result should not be denied an oppor-

tunity to recover," *id.* at 120, 575 A.2d at 1286. (Emphasis added.) *Complete* immunity from liability cannot be justified. *Id.* at 119–120, 575 A.2d at 1286.

Armed with these standards, we proceed to determine whether the classification of private versus public tortfeasors created by SB 151-FN is "reasonable, not arbitrary, *and* . . . rest[s] upon some ground of difference having a fair and substantial relation to the object of the legislation." *Carson*, 120 N.H. at 932, 424 A.2d at 831 (citations omitted). We first examine proposed RSA 231:92, I, which sets forth three ways in which a municipality can subject itself to liability for injury caused by an "insufficiency": (1) where the municipality receives written notice of the insufficiency, but fails to immediately erect "danger signals" and thereafter repair the insufficiency "in good faith and with reasonable dispatch"; (2) where municipal officers responsible for road maintenance receive actual notice of the insufficiency, other than by a written notice, and act with gross negligence or in bad faith; or (3) where a municipal officer or employee intentionally creates the insufficiency and acts with gross negligence or reckless disregard.

■ The provisions described above largely satisfy the "actual notice/adequate opportunity to respond" requirements of *City of Dover*, and our allowance of a greater-than-ordinary-negligence standard permits a municipality to require plaintiffs to prove "gross negligence." However, two potential problems exist. First, although proposed RSA 231:92, I, refers to injury or damage "arising out of [the] construction, maintenance, or repair of public highways and *sidewalks*" (emphasis added), the paragraph precludes municipal liability "unless such injury or damage was caused by an insufficiency, as defined by RSA 231:90." Proposed RSA 231:90, II, defining "insufficiency," refers only to highways, and cannot easily be interpreted to cover sidewalks. If this provision is read to render municipalities immune from liability for injuries caused by insufficient sidewalks, it is unconstitutional. Similarly, we note that proposed RSA 231:90, I, III, and :92-a refer only to highways. To the extent these provisions give municipalities immunity for insufficient sidewalks, they are unconstitutional.

The second concern we have is that proposed RSA 231:92, I(b) may create an unconstitutional loophole. The provision triggers municipal liability when "municipal officers responsible for maintenance and repair of highways had actual notice or knowledge of such insufficiency, by means other than written notice pursuant to RSA 231:90."

This provision appears to be designed to soften the harshness of proposed RSA 231:90–91, which require a person to give a signed, written notice of insufficiency to either a selectman (or mayor) or highway agent (or street commissioner), *and* to the town or city clerk before the municipality can be held liable under proposed RSA 231:92, I(a). If a person does not know of the written notice requirements, he or she could trigger municipal liability under proposed RSA 231:92, I(b) by simply telephoning a municipal officer "responsible for maintenance and repair of highways" and orally notifying the officer of the insufficiency. In addition, municipal liability may result if the officers discover the insufficiency through their own observation. Thus, the "actual notice" requirement of *City of Dover* appears to be satisfied.

■ However, proposed RSA 231:92, I(b) applies only to "municipal officers responsible for maintenance and repair of highways." If this phrase is interpreted to mean only street commissioners and road agents, then a city would remain immune from liability even if every resident telephoned the mayor regarding the insufficiency, or if both the mayor and the city clerk passed by and noticed the insufficiency every day. We stated in *City of Dover* that municipal liability may be triggered "when a *community* has actual notice of a hazardous condition," *City of Dover*, 133 N.H. at 120, 575 A.2d at 1286 (emphasis added), and we interpret this to mean that notice to a mayor, selectman, clerk, or officer "responsible for maintenance and repair of highways" constitutes notice to the municipality. Thus, it is our opinion that proposed RSA 231:92, I(b) is unconstitutional insofar as it may be interpreted to apply only to road agents and street commissioners.

In its memorandum filed in opposition to SB 151-FN, Abramson, Reis & Brown argue that the provisions of proposed RSA 231:92, I, are constitutionally inadequate because they cloak municipalities with immunity when they have no actual knowledge of an insufficiency, even though, in light of facts readily available to them, they *should* have known of it. We are unpersuaded by this argument, because *City of Dover* plainly limits a municipality's liability to instances of *actual*, not *constructive*, knowledge. *Id.* at 120, 575 A.2d at 1286.

■ Abramson, Reis & Brown also argues in its memorandum that the definition of "insufficiency" contained in proposed RSA 231:90, II is inadequate because it "denies recourse to those plaintiffs injured as a result of safety hazards, known by the municipality

to exist, which are reasonably discoverable or avoidable by the public, but which for some reason are not in fact discovered or avoided." Although SB 151-FN places heavy responsibility on citizens to look out for road and sidewalk hazards, we do not think that this responsibility is unconstitutionally onerous. Persons using public highways and sidewalks are required to obey all posted traffic signs and proceed with reasonable caution. A municipality should not be held responsible for injuries caused when a traveler ignores traffic safety standards created to prevent such injuries.

We next examine proposed RSA 231:92-a. This provision gives a municipality immunity for damage caused by insufficiencies, regardless of actual notice, when the insufficiencies are caused by inclement weather, "and the municipality's failure or delay in removing or mitigating such hazards is the result of its implementation, absent wilful or wanton negligence or recklessness, of a winter or inclement weather maintenance policy or set of priorities adopted in good faith by the officials responsible for such policy." Abramson, Reis & Brown argue that this provision violates the "actual notice/adequate opportunity to respond" requirements of *City of Dover*. We disagree. Inclement weather often makes it impossible for a municipality to rid highways and sidewalks of insufficiencies, or even to post warning signs, as quickly as it could in fair weather. Inclement weather can immediately cause insufficiencies on every municipal highway at once, as in the case of a severe snowstorm, thereby straining a municipality's resources and forcing municipal officials to set priorities in remedying the insufficiencies. By its nature, inclement weather may rob a municipality of an adequate opportunity to respond to an insufficiency before an injury occurs. Thus, it is our opinion that a municipality which follows the provisions of proposed RSA 231:92-a will satisfy *City of Dover*'s mandate that no municipality be held liable for an insufficiency unless it has had adequate opportunity to respond to it.

Although the "actual notice/adequate opportunity to respond" standard is met by proposed RSA 231:92-a, the section requires a showing of "wilful or wanton negligence or recklessness," not "gross negligence" or "reckless disregard," as required by proposed RSA 231:92, I(b) and (c). None of these degrees of culpability are defined in the proposed statutes; moreover, *City of Dover* does not specify what degree of culpability beyond ordinary negligence can be required. We assume that "wilful or wanton negligence or recklessness" are intended to refer to a degree of culpability greater

than ordinary negligence, *see id.* at 10. As such, proposed RSA 231:92-a satisfies the constitutional strictures set forth in *City of Dover*. Until we are squarely presented with the issue, we will not decide whether a statute could require a plaintiff to prove a degree of culpability even greater than gross negligence, recklessness, or wilful or wanton negligence.

The remaining provisions of SB 151-FN do not appear to contravene the requirements of *City of Dover*, or otherwise violate part I, articles 2 and 12. *City of Dover* does not require a municipality to keep all of its highways and sidewalks maintained at the same level of repair, and therefore paragraph III of proposed RSA 231:90 appears constitutionally adequate. Paragraph II of proposed RSA 231:91 renders a municipality liable in the event if fails to respond to a written notice of insufficiency in the manner required by proposed RSA 231:91, I, and therefore repeats the provisions of proposed RSA 231:92, I(a). Although largely redundant, this paragraph suffers no constitutional infirmities beyond those described above in connection with proposed RSA 231:92.

Proposed RSA 231:92, II, requiring a plaintiff's complaint to specify the means by which a municipality learned of an insufficiency, does no more than admonish a plaintiff to properly investigate and carefully plead his or her case. As such, it is constitutional. Paragraph III of proposed RSA 231:92 states that the acceptance or layout of a road by a municipality does not give it actual notice of any insufficiency created prior to the acceptance or layout. This provision also satisfies the requirements of *City of Dover*. One cannot assume that municipal officials carefully inspect every foot of a road before the road is made public. If an official does observe, or is told of, an insufficiency before layout or acceptance, then the provisions of proposed RSA 231:92, I, come into play and the "actual notice/adequate opportunity to respond" requirements are met.

Paragraph IV of proposed RSA 231:92 labels the setting of road maintenance standards a "discretionary, policy function for which the municipality shall not be held liable in the absence of malice or bad faith." Although the determination of whether particular municipal act is a "discretionary, policy function" is for the court, and not the legislature, to make, we agree with the proposition and

can find no constitutional fault with it. *See City of Dover*, 133 N.H. at 115, 575 A.2d at 1283.

██ ██ Proposed RSA 231:93, granting municipalities immunity for injuries suffered on particular classes of highways, is constitutionally justified because each class named consists of either high ways maintained solely by the State, see RSA 230:1 (Supp. 1990) (class I highways); RSA 230:3 (Supp. 1990) (State-maintained portions of class II highways); RSA 230:66 (Supp. 1990) (highways to public waters); RSA 233:8 (Supp. 1990) (class III roads); or highways not required to be maintained by a municipality, *see* RSA 231:82 (class VI highways). As such, municipalities should not be held responsible for insufficiencies on these roads. Finally, proposed RSA 412:3 passes constitutional muster. This provision would amend current RSA 412:3, which allows municipalities to purchase liability insurance, to state that a municipality's liability is determined as if it were a private corporation, "except when a standard of care differing from that of [a] private corporation is set forth by statute." In *City of Dover*, we explicitly stated that a municipality may be held to a lower standard of care with respect to its highways and sidewalks than a private corporation. 133 N.H. at 118, 575 A.2d at 1285. Thus, this provision comports with part I, articles 2 and 12.

Finally, proposed RSA 507-B:2 appears to comply with the requirements of *City of Dover*. The proposed statute merely refers the reader to RSA chapter 231 for a discussion of municipal liability with regard to sidewalks, streets, and highways, and therefore adds no substance to SB 151-FN.

We note that "our response to the . . . question[s] presented reflects the best review of the general law that we have been able to make in the time available to us." *Opinion of the Justices*, 128 N.H. 14, 17, 509 A.2d 744, 746 (1986). Moreover, "since requests for our advisory opinions come to us with no record beyond the assumptions stated in the requests themselves," *Opinion of the Justices*, 132 N.H. 777, 783, 584 A.2d 1342, 1346 (1990), our response is necessarily qualified. Because it is impossible to anticipate the myriad fact patterns which may arise and test the limits of SB 151-FN, we "cannot guarantee that we have been able to address every possible issue that may be raised under article[s] [2 and 12]." *Opinion of the Justices*, 128 N.H. at 17, 509 A.2d at 746.

We respectfully decline to answer your third question, whether SB 151-FN violates any other provision of the New Hampshire Consti-

tution, because of its generality. *See Opinion of the Justices*, 131 N.H. 640, 644, 557 A.2d 273, 276 (1989).

DAVID A. BROCK
WILLIAM F. BATCHELDER
WILLIAM R. JOHNSON
W. STEPHEN THAYER, III
SHERMAN D. HORTON, JR.

May 28, 1991

*New Hampshire Municipal Association (H. Bernard Waugh, Jr.,* on the memorandum), filed a memorandum in support of negative answers.

*Abramson, Reis & Brown,* of Manchester (*Jill A. DeMello*), filed a memorandum in support of affirmative answers.