Hillsborough-northern judicial district
No. 97-820

## CRAIG J. AND CHRISINDA BOWDEN

v.

## COMMISSIONER, NEW HAMPSHIRE DEPARTMENT OF TRANSPORTATION & a.

December 21, 1999

*Kalled Law Offices*, of Ossipee (*John P. Kalled* on the brief and orally), for the plaintiffs.

*Philip T. McLaughlin*, attorney general (*Mark P. Hodgdon*, senior assistant attorney general, on the brief and orally), for the defendants.

*Donahue Law, P.A.*, of Vero Beach, Florida (*Kathryn B. Johnston* on the brief), for the New Hampshire Trial Lawyers Association, as *amicus curiae*.

THAYER, J. The plaintiffs, Craig and Chrisinda Bowden, appeal a decision of the Superior Court (*Barry*, J.) granting a motion to dismiss filed by the defendants, the commissioner of the department of transportation, the department of transportation, and the State of New Hampshire. We affirm.

The plaintiffs alleged the following facts. On April 17, 1993, at approximately 6:40 p.m., Craig Bowden was driving his motorcycle in a southeasterly direction around the Amoskeag Rotary in Manchester. As the plaintiff approached the intersection of the Amoskeag Rotary and Eddy Road, he encountered a defect in the surface of the roadway. The defect was a steel grate-type storm drain extending approximately twenty-four inches into the travel portion of the roadway. The upper surface of the storm drain was approximately four inches below the grade surface of the surrounding roadway. Because of traffic, lack of warning signs or markings, and an inability to see the grate as he drove through the rotary, the plaintiff drove over the steel grate, which caused him to lose control of his motorcycle. Bowden and the motorcycle slid approximately fifty-eight feet until he struck the curb on the opposite side of the road.

Plaintiffs' counsel sent a notice to the defendants on April 26, 1994, informing them that he represented the plaintiffs in a "claim against the State . . . for damages arising out of a motorcycle accident due to an alleged defect in the Amoskeag Rotary." The plaintiffs contend that this letter put the defendants on notice of an insufficiency within the meaning of RSA 230:78, II(b) (1993).

In their first writ filed on March 25, 1996, the plaintiffs alleged that the commissioner and his subordinates had a duty to exercise care in designing, constructing, inspecting, and maintaining the public ways to ensure that they are in a passable condition. They alleged that the defendants personally or through their subordinates failed to exercise reasonable care in the maintenance of these roadways, and that "the Commissioner and the [New Hampshire Department of Transportation] knew or should have known the location and nature, in specific terms, of the insufficient condition and defect existing in the highway." Further, despite receipt of

notice of the insufficiency, the defendants "failed to take prompt corrective action as required by RSA 230:79 [(1993)] to eliminate the defect/insufficient condition which failure directly resulted in injury to the plaintiff[s]."

In July 1996, the Superior Court (*Lynn*, J.) granted the defendants' first motion to dismiss. After reviewing the statutory requirements before liability may be imposed on the State for damages resulting from a highway insufficiency in RSA 230:80, the court found that the plaintiffs failed to describe "with particularity the means by which the department of transportation received actual notice of the alleged insufficiency" in the roadway "at or about the date of the accident." The court held that "[w]ritten notification of an alleged insufficiency, subsequent to personal injury and property damage, does not comport with RSA 230:80, II. Neither does an assumption that the [department of transportation] possessed actual notice through routine maintenance and repair of the roadway comport with RSA 238:80, II [(1993)]." The court gave the plaintiffs an opportunity to file "an amended writ which sets forth with specificity the manner in which the defendant received actual notice of the insufficiency and the conduct of the defendant which constitutes gross negligence or bad faith."

The plaintiffs filed an amended writ alleging that the State had a practice of conducting "regular and routine visual inspections of all portions of the turnpikes," and consequently "the defendants have had regular and continuous notice and knowledge of the condition of the steel grate catch basin in question." The plaintiffs alleged that the department of transportation guidelines require these types of drainage grates to be set one inch below pavement level, and that this grate was "nearly two inches lower than that permitted" by the guidelines. The plaintiffs alleged that as a result of these routine inspections, "the [S]tate had notice and knowledge of, in specific terms . . ., well before and after [the date of the accident], the insufficient condition and defect existing in the highway." They allege that the State was given notice of the insufficiency on April 28, 1994, and the State's failure after the notice to determine whether an insufficiency exists and to take corrective action resulted in a waiver of the State's claim of lack of notice.

On September 18, 1997, the Superior Court (*Barry*, J.) granted the defendants' second motion to dismiss after finding the plaintiffs "failed to amend the writ and set forth with specificity the manner in which the defendant received *actual* notice of the defect in the storm drain and conduct of the defendant which constitutes gross negligence or bad faith." The court then dismissed the State of New

Hampshire and the department of transportation as defendants. The court noted, however, that "[t]his case remains open for trial on 10/20/97 as to [the commissioner of the department of transportation]. If not, please advise the Court." On October 10, 1997, the court issued an order dismissing the remainder of the case because "[n]o party appeared for final pre-trial conference on 10/9/97."

On appeal, the plaintiffs argue that: (1) RSA 230:78 and :80, I(b) violate equal protection, due process, and other rights and privileges conferred under Part I, Articles 2, 8, 12, 14, and 20 of the New Hampshire Constitution, and the Fifth, Seventh, and Fourteenth Amendments to the United States Constitution; and (2) the superior court erred in requiring them to follow substantive pleading requirements greater than or different from those set forth in *Morency v. Plourde*, 96 N.H. 344, 345-46, 76 A.2d 791, 792 (1950).

We first address the plaintiffs' constitutional questions under our State Constitution, *State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350-51 (1983), and "because the State Constitution provides at least as much protection as the Federal Constitution in this instance, we need not conduct a separate federal analysis." *In re 1994 Chevrolet Cavalier*, 142 N.H. 705, 707, 708 A.2d 397, 398 (1998); see *Douglas v. Douglas*, 143 N.H. 419, 423-24, 728 A.2d 215, 218-19 (1999).

In *Merrill v. City of Manchester*, 114 N.H. 722, 728-29, 332 A.2d 378, 382-83 (1974), we held that municipal immunity, a judicially created doctrine that had become outdated and outmoded, should be sharply limited. While abrogating the common law doctrine except for two specific categories of claims, *Merrill*, 114 N.H. at 729, 332 A.2d at 383, we recognized that "the legislature has authority to specify the terms and conditions of suit against cities and towns, limit the amount of recovery, or take any other action which in its wisdom it may deem proper." *Id.* at 730, 332 A.2d at 384. In *City of Dover v. Imperial Casualty & Indemnity Co.*, 133 N.H. 109, 575 A.2d 1280 (1990), we held that "municipal immunity, as a judicially created doctrine, no longer exists." *Id.* at 115, 575 A.2d at 1283. As drafted, the statute at issue in *City of Dover* violated equal protection under the State Constitution because it was unreasonably broad, was arbitrary, and did not bear a fair and substantial relation to the legislative objective. *Id.* at 120, 575 A.2d at 1286. We indicated, however, that a statute "tailored to protect the interests of communities when they have no notice of a problem or when they have inadequate opportunity to respond to a known problem may meet constitutional requirements." *Id.*

In apparent response to our decision in *City of Dover*, the senate drafted legislation limiting municipal liability and asked for

our opinion on the constitutionality of the proposed legislation. *See Opinion of the Justices*, 134 N.H. 266, 592 A.2d 180 (1991). We responded that the proposed statute limiting municipal liability to instances where the municipality had received actual notice of an insufficiency or defect in roadways or sidewalks, but failed to take corrective action, facially survived constitutional scrutiny. *See id.* at 275-76, 592 A.2d at 185-86. The general court then adopted that standard for both municipal liability, *see* Laws 1991, ch. 385 (codified at RSA 231:90-:92 (1993)), and State liability, *see* Laws 1992, ch. 188 (codified at RSA 230:78-:80). In adopting the latter statute, the general court noted that

> highways . . . unlike other property interests, are open to constant unsupervised public use, subject to interruption only in limited circumstances; that their condition for public use is subject to the ever-changing, unpredictable effects of sun, rain, wind, ice, snow and frost, . . . and that the existing construction standard or state of repair of any highway . . . is a product of its unique history of capital investments, made at different times, in response to differing and evolving needs of the traveling public. It is, therefore, unreasonable to expect that all highways . . . will be routinely patrolled or subject to regular preventative maintenance, or that all such highways . . . should be constructed and maintained to any uniform standards.

Laws 1992, 188:1. We hold that the requirements of actual notice and the standard for the State's duty before liability may be imposed as expressed in RSA 230:78-:80 are constitutional. *See Opinion of the Justices*, 134 N.H. at 275-76, 592 A.2d at 185-86; *City of Dover*, 133 N.H. at 120, 575 A.2d at 1286.

Next, we address whether the trial court erroneously held the plaintiffs to a standard of pleading higher than generally required under our common law. In *Morency*, 96 N.H. at 345-46, 76 A.2d at 792, we held that

> [p]leadings ought to be simple, concise and indicate the theory on which the plaintiff is proceeding so that the opposing party can adequately defend. The defendant is entitled to be informed of the theory on which the plaintiffs are proceeding and the redress that they claim as a result of the defendant's actions.

In the instant case, to determine whether the pleadings satisfy this standard, we must review them in light of the applicable law and our standard for reviewing a motion to dismiss.

> In reviewing a motion to dismiss for failure to state a claim upon which relief may be granted, we assume the truth of the facts alleged in the plaintiff's pleadings and construe all reasonable inferences in the light most favorable to him. If the facts pled do not constitute a basis for legal relief, we will uphold the granting of the motion to dismiss.

*Buckingham v. R. J. Reynolds Tobacco Co.*, 142 N.H. 822, 825, 713 A.2d 381, 383 (1998) (quotation and citation omitted). To determine whether the pleadings state a claim upon which relief could be granted, we ask whether the plaintiffs established a *prima facie* case for State liability for highway defects as defined in RSA 230:78-:80. RSA 230:78 provides:

> I. Whenever any class I or class II highway or highway bridge in the state shall be insufficient, any person may give notice of such insufficiency to the department of transportation. The notice shall set forth in general terms the location of such highway or highway bridge, and the nature of such insufficiency.
> II. For purposes of this subdivision, a highway or bridge thereon shall be considered "insufficient" only if:
> (a) It is not passable in any safe manner by those persons or vehicles permitted on such highway or bridge thereon; or
> (b) There exists a safety hazard which is not reasonably discoverable or reasonably avoidable by a person who is traveling upon such highway or highway bridge at posted speeds in obedience to all posted regulations, and in a manner which is reasonable and prudent as determined by the condition and state of repair of the highway or highway bridge, including any warning signs, and prevailing visibility and weather conditions.
> III. A highway or highway bridge shall not, in the absence of impassability or hidden hazard as set forth in paragraph II, be considered "insufficient" merely by reason of the department of transportation's failure to construct, maintain or repair it to the same standard as some other highway or highway bridges or to a level of service commensurate with its current level of public use.

RSA 230:79 provides:

I. Upon receipt of such notice of insufficiency, and unless the commissioner determines in good faith that no such insufficiency exists, the department of transportation shall immediately cause proper danger signals to be placed to warn persons by day or night of such insufficiency, and shall, within 96 hours thereafter, develop a plan for repairing such highway or highway bridge, and shall implement such plan in good faith and with reasonable dispatch until the highway or highway bridge is no longer insufficient, as defined by RSA 230:78.

II. If the department of transportation fails to act as set forth in paragraph I, it shall be liable in damages for all personal injury or property damage proximately caused by the insufficiency identified in the notice, subject to the liability limits under RSA 541-B:14.

And finally, RSA 230:80 provides:

I. The department of transportation shall not be held liable for damages in an action to recover for personal injury or property damage arising out of its construction, maintenance, or repair of public highways and highway bridges unless such injury or damage was caused by an insufficiency, as defined by RSA 230:78, and:

(a) The department of transportation received a notice of such insufficiency as set forth in RSA 230:78, but failed to act as provided by RSA 230:79; or

(b) The commissioner of the department of transportation who is responsible for maintenance and repair of highways or highway bridges, had actual notice or knowledge of such insufficiency, by means other than notice pursuant to RSA 230:78 and was grossly negligent or exercised bad faith in responding or failing to respond to such actual knowledge; or

(c) The condition constituting the insufficiency was created by an intentional act of an employee acting in the scope of his official duty while in the course of his employment, acting with gross negligence, or with reckless disregard of the hazard.

. . . .

II. Any action to recover damages for bodily injury, personal injury or property damage arising out of construc-

tion, repair or maintenance of its public highways or highway bridges shall be dismissed unless the complaint describes with particularity the means by which the department of transportation received actual notice of the alleged insufficiency, or the intentional act which created the alleged insufficiency.

III. The acceptance or layout of a public highway shall not be construed to confer upon the department of transportation any notice of, or liability for, insufficiencies or defects which arose or were created prior to such layout or acceptance.

IV. The setting of construction, repair, or maintenance standards of levels of service of highways and highway bridges by the commissioner, whether accomplished formally or informally, shall be deemed a discretionary, policy function for which the department of transportation shall not be held liable in the absence of malice or bad faith.

When read in concert, RSA 230:78-:80 establish a statutory scheme whereby State liability may arise after the State is put on notice of an alleged insufficiency by any person, *see* RSA 230:78. Once put on notice of the insufficiency, the State shall immediately place warning signals and shall thereafter develop a plan to repair the insufficiency. *See* RSA 230:79, I. If the State does not warn motorists and develop a repair plan, the State may be liable for damages "caused by the insufficiency." RSA 230:79, II. By statute, State liability arises only after: (1) the State has been given a notice of insufficiency within the meaning of RSA 230:78, *see* RSA 230:80, I(a); (2) the commissioner "had actual notice or knowledge of such insufficiency, by means other than notice pursuant to RSA 230:78 *and* was grossly negligent or exercised bad faith in responding or failing to respond to such actual knowledge," RSA 230:80, I(b) (emphasis added); or (3) the insufficiency was created by a State employee, acting intentionally and within the scope of his official duty while in the course of his employment, acting with gross negligence, or with reckless disregard of the hazard, RSA 230:80, I(c).

■ After a review of the pleadings and the trial court's orders, we conclude that the trial court dismissed the plaintiffs' case not because the pleadings were insufficient under *Morency*, but because the pleadings failed to establish a *prima facie* case under RSA 238:80. While the pleadings sufficiently explain the theory under which the plaintiffs sought recovery, they fail to allege that the

State either had a report of an insufficiency, *see* RSA 230:80, I(a), or had actual knowledge of an insufficiency, *see* RSA 230:80, I(b), *before* the motorcycle accident in April 1993.

The plaintiffs' theory of liability under RSA 230:80 arising from a post-injury notice of a roadway insufficiency is fatally flawed in at least two regards. First, the plaintiffs' theory of liability errone-ously presupposes that the presence of a defect in the roadway at the time of the notice means that same defect existed when the injury occurred. Second, the plaintiffs' theory wrongly assumes that because that reported defect must have existed for some period of time, the State would, in the course of its construction, inspection, maintenance, and repair functions on public highways, have ob-tained either actual or constructive notice of the defect. The plaintiffs, however fail to demonstrate that the State had received a notice of insufficiency, *see* RSA 230:78, I, :80, I(a), or had obtained actual notice of the defect, *see* RSA 230:80, I(b), prior to the April 1993 injuries. If we assume all facts in the complaint to be true, although the plaintiffs provided the State with notice of an insuffi-ciency within the meaning of RSA 230:78, the facts as pled fail to establish that the State received *actual* notice of the insufficiency *before* the April 1993 injuries.

The trial court correctly ruled that the plaintiffs' naked legal conclusion that the State must have had notice based on the State's responsibility for highway maintenance and the plaintiffs' 1994 notice was insufficient to satisfy the notice requirement of RSA 230:80. The plaintiffs argue that their 1994 notice "gave the defendants an opportunity to correct the defects identified by the plaintiffs," but the defendants "chose to do nothing about them," and therefore "the defendants have . . . *waived* any untimely or inadequate notice arguments or defense by concluding that no insufficiency exists." While the plaintiffs contend that their April 1994 notice provided the defendants with notice of an insufficiency in the roadway, *see* RSA 230:78, the State's liability arises only *after* the State fails to remedy the defect. *See* RSA 230:79. Under RSA 230:79, any liability that arises after a notice of insufficiency under RSA 230:78 applies only to incidents occurring after the notice. Absent a claim of actual notice of an alleged or actual defect prior to the injury, there can be no liability under RSA 230:80, I(a)-(b).

*Affirmed.*

All concurred.