Coos
No. 2005-342

### DEBRA A. CLOUTIER

v.

### CITY OF BERLIN

Argued: May 10, 2006
Opinion Issued: August 2, 2006

14

*Hall Stewart, P.A.*, of Manchester (*Michael P. Hall* and *John B. Kenison, Jr.* on the brief, and *Mr. Hall* orally), for the plaintiff.

*Wadleigh, Starr & Peters, P.L.L.C.*, of Manchester (*John A. Lassey* on the brief and orally), for the defendant.

*Paul G. Sanderson*, staff attorney, of Concord, by brief, for The N.H. Local Government Center, as *amicus curiae*.

DUGGAN, J. The plaintiff, Debra A. Cloutier, sued the defendant, City of Berlin, for personal injuries and economic losses that she suffered while operating her vehicle on one of its streets. The jury returned a verdict for the City. The plaintiff appeals an order of the Superior Court (*Houran*, J.) denying her post-trial motion to set aside the verdict and for a new trial. The City cross-appeals the denial of its pre-trial motion for summary judgment. We affirm the trial court's denial of the plaintiff's post-trial motion and do not reach the issues raised in the City's cross-appeal.

The record reflects the following facts. On the night of August 7, 2000, the plaintiff was traveling in her vehicle through the intersection of Grafton and Rockingham Streets in Berlin. A heavy rainstorm was just ending. During the rainstorm, excess water displaced a manhole cover in the intersection. As the plaintiff drove through the intersection, she either drove over the open manhole or collided with the displaced manhole cover. As a result, the plaintiff suffered personal injuries and property damage.

The intersection of Grafton and Rockingham Streets is located on a slope. There had never before been a reported manhole cover displacement at this particular intersection. There had, however, been reports made to City officials of partial and complete manhole cover displacement at manholes located on or near long slopes at other locations in the City, usually during heavy rainfall.

After the accident, the plaintiff sued the City, alleging that her damages resulted from the City's failure to correct the conditions that caused the manhole cover to become displaced. She alleged that the City was aware of manhole cover displacement at similarly situated manholes and, accordingly, it should have anticipated and guarded against manhole cover displacement at the intersection where the accident occurred. The jury returned a verdict in favor of the City. The plaintiff's post-trial motions were denied and this appeal followed.

The plaintiff contends on appeal that the trial court erred by instructing the jury regarding the municipal liability provisions in RSA 231:90 through :92-a (1993 & Supp. 2005). She argues first that RSA 231:90 through :92

(1993) are "immunity defenses," which, pursuant to RSA 412:3 (1998) (repealed 2002) (current version at RSA 507-B:7-a (Supp. 2005)), the City was prohibited from asserting because it had liability insurance. Next, she argues that, regardless of the existence of liability insurance coverage, RSA 231:92, I(b) is not applicable in this case. Finally, she argues that the trial court's inclement weather instruction, given pursuant to RSA 231:92-a (Supp. 2005), was erroneous because: (1) RSA 231:92-a is not applicable to the facts of this case; and (2) even if the statute is applicable, the language of the instruction itself was deficient.

*I. RSA 412:3*

The plaintiff first argues that RSA 412:3 renders the municipal liability provisions of RSA 231:90 through :92 inapplicable to a municipality which has liability insurance. RSA 412:3, at the time of the plaintiff's accident, provided, in pertinent part:

> In any action against ... [a municipality] to enforce liability on account of a risk [for which the municipality has procured a policy of insurance], the insuring company or ... [municipality] shall not be allowed to plead as a defense immunity from liability for damages resulting from the performance of governmental functions, and its liability shall be determined as in the case of a private corporation except when a standard of care differing from that of [a] private corporation is set forth by statute; provided, however, that liability in any such case shall not exceed the limits of coverage specified in the policy of insurance or as to governmental units defined in RSA 507-B, liability shall not exceed the policy limit or the limit specified in RSA 507-B:4, if applicable, whichever is higher, and the court shall abate any verdict in any such action to the extent that it exceeds such limit.

The plaintiff argues that RSA 231:90 through :92 are immunity defenses within the meaning of RSA 412:3, and thus the City is prohibited from relying upon them because it has liability insurance. The City, however, argues that RSA 231:90 through :92 set forth a standard of care differing from that of a private corporation, and thus trigger the exception contained in RSA 412:3 to permit the City to rely upon RSA 231:90 through :92 in its defense.

The trial court interpreted RSA 412:3 to provide that "even where, as here, a defendant municipality has procured insurance for the risk at issue, it is nonetheless entitled to have its liability determined under an applicable statutory standard of care differing from that of a private

corporation." It concluded that RSA 231:90 through :92 "establish[] such an applicable statutory standard of care."

The interpretation of a statute is a question of law, which we review *de novo. Carlisle v. Frisbie Mem. Hosp.*, 152 N.H. 762, 773 (2005). We are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. *Id.* We first examine the language of the statute, and, where possible, ascribe the plain and ordinary meanings to the words used. *Id.* When a statute's language is plain and unambiguous, we need not look beyond it for further indication of legislative intent, and we will not consider what the legislature might have said or add language that the legislature did not see fit to include. *Id.* If a statute is ambiguous, however, we consider legislative history to aid our analysis. *Id.* Our goal is to apply statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme. *Id.*

The language of RSA 412:3 is plain and unambiguous. It provides that a municipality with insurance coverage may not "plead as a defense immunity from liability for damages resulting from the performance of governmental functions," and further provides that its liability "shall be determined as in the case of a private corporation *except when* a standard of care differing from that of [a] private corporation is set forth by statute." RSA 412:3 (emphasis added).

The parties dispute whether any of the provisions in RSA 231:90 through :92 set forth a defense of immunity or a statutory standard of care. The plaintiff suggests that even if any provision in RSA 231:90 through :92 establishes a standard of care, it cannot apply under RSA 412:3 because each provision is "entangled with prohibited immunity defenses." We examine each of the relevant provisions in turn.

RSA 231:90, entitled "Duty of Town After Notice of Insufficiency," defines "insufficiency" and describes the form of written notice required by RSA 231:92, I(a). It provides, in pertinent part,

> I. Whenever any class IV or class V highway . . . in any municipality shall be insufficient, any person may give written notice of such insufficiency to one of the [designated municipal officials], and a copy of said notice to the town or city clerk. The notice shall be signed and shall set forth in general terms . . . the location of such highway . . . and the nature of such insufficiency.
>
> II. [A] highway . . . shall be considered "insufficient" only if:
> (a) It is not passable in any safe manner by those persons or vehicles permitted on such . . . highway by state law or by any more stringent local ordinance or regulation; or

(b) There exists a safety hazard which is not reasonably discoverable or reasonably avoidable by a person who is traveling upon such highway at posted speeds ..., in obedience to all posted regulations, and in a manner which is reasonable and prudent as determined by the condition and state or repair of the highway . . ., including any warning signs, and prevailing visibility and weather conditions.

III. A highway ... shall not, in the absence of impassability or hidden hazard as set forth in paragraph II, be considered "insufficient" merely by reason of the municipality's failure to construct, maintain or repair it to the same standard as some other highway or sidewalk, or to a level of service commensurate with its current level of public use.

RSA 231:90.

█ The plaintiff argues that RSA 231:90 "does not establish a standard of care but rather limits a municipality's liability to narrowly defined hazards (insufficiencies)," thus creating an immunity defense. However, RSA 231:90 does nothing more than define "insufficiency," RSA 231:90, II, III, and "written notice," RSA 231:90, I. Standing alone, it is neither a standard of care provision nor an immunity provision.

RSA 231:91 describes the municipality's duty to respond to a notice of insufficiency, see RSA 231:90, I, and provides for municipal liability resulting from a failure to respond as required. RSA 231:91 provides, in pertinent part,

I. Upon receipt of such notice of insufficiency, and unless the highway agents or street commissioners determine in good faith that no such insufficiency exists, the municipality shall immediately cause proper danger signals to be placed to warn persons by day or night of such insufficiency, and shall, within 72 hours thereafter, develop a plan for repairing such highway ... and shall implement such plan in good faith and with reasonable dispatch until the highway . . . is no longer insufficient, as defined by RSA 231:90, II.

II. If the municipality fails to act as set forth in paragraph I, it shall be liable in damages for all personal injury or property damage proximately caused by the insufficiency identified in the notice, subject to [statutory limitations].

█ The plaintiff argues that RSA 231:91 "is primarily an immunity statute because it relies on the narrow liability-limiting definition of

'insufficiency' as well as the liability-limiting written notice requirements of RSA 231:90." The plaintiff concedes, however, that RSA 231:91 "establish[es] a standard of care for municipalities which have received written notice of insufficiencies." We disagree that RSA 231:91, standing alone, is an immunity statute. RSA 231:91 does not limit the liability of municipalities; rather, it provides that a municipality is required to respond to a written notice of an insufficiency, RSA 231:91, I, and, if it fails to do so, will be liable for any injury caused by that insufficiency, RSA 231:91, II. At most, RSA 231:91 sets forth a standard of care which establishes municipal liability, but it does not expressly limit such liability. Standing alone, RSA 231:91 does not provide that a lack of written notice or a lack of a statutory "insufficiency" will result in limited liability on the part of the municipality. It is, therefore, not an immunity provision.

RSA 231:92, entitled "Liability of Municipalities; Standard of Care," provides, in pertinent part,

> I. A municipality shall not be held liable for damages in an action to recover for personal injury or property damage arising out of its construction, maintenance, or repair of public highways ... unless such injury or damage was caused by an insufficiency, as defined by RSA 231:90, and:
>
> (a) The municipality received a written notice of such insufficiency as set forth in RSA 231:90, but failed to act as provided by RSA 231:91; or
>
> (b) [Certain municipal officials or employees] had actual notice or knowledge of such insufficiency, by means other than written notice pursuant to RSA 231:90, and were grossly negligent or exercised bad faith in responding or failing to respond to such actual knowledge; or
>
> (c) The condition constituting the insufficiency was created by an intentional act of a municipal officer or employee acting in the scope of his official duty while in the course of his employment, acting with gross negligence, or with reckless disregard of the hazard.

Because the jury in this case was instructed regarding only paragraph I of RSA 231:92, we do not consider whether the remaining paragraphs are immunity provisions or whether they set forth a standard of care.

██ The plaintiff argues that RSA 231:92, I, "is primarily an immunity statute because it, like RSA 231:91, relies on the liability-limiting definition of 'insufficiency' as well as the liability-limiting written notice requirements contained in RSA 231:90." We agree that RSA 231:92, I, is a

municipal immunity provision. By providing that a municipality *"shall not be held liable ... unless"* certain statutory requirements are met, RSA 231:92, I, provides limited liability to municipalities and, in essence, confers some degree of immunity upon them. RSA 231:92, I (emphasis added).

■ However, the plaintiff concedes that RSA 231:92, I, simultaneously establishes a standard of care different from that of a private corporation that is applicable to municipalities. By providing that a municipality may be liable for injuries or damages caused by a statutory insufficiency when, among other things, it fails to act in accordance with RSA 231:91 upon receipt of a written notice of an insufficiency, or it is grossly negligent or it acts in bad faith in response to a municipal official's actual notice or knowledge of an insufficiency, RSA 231:92, I, establishes a special standard of care applicable to municipalities in the construction, maintenance, and repair of public highways.

Because RSA 231:92, I, assumes this dual role, it is unclear from its plain language and the plain language of RSA 412:3 whether the legislature intended that insured municipalities be able to avail themselves of its protections. We thus turn to legislative history for guidance. *See Carlisle,* 152 N.H. at 773.

Prior to 1991, RSA 507-B:2 (1983) (repealed and reenacted 1991) provided, in pertinent part:

> A governmental unit may be held liable for damages in an action to recover for bodily injury, personal injury or property damage caused by its fault or by fault attributable to it, arising out of ownership, occupation, maintenance or operation of ... [a]ll premises, except public sidewalks, streets, highways or publicly owned airport runways and taxiways.

In *City of Dover v. Imperial Casualty & Indemnity Co.*, 133 N.H. 109, 120 (1990), we held that the exception in RSA 507-B:2 for public sidewalks, streets, and highways violated Part I, Article 14 of the State Constitution. Shortly thereafter, the legislature repealed and reenacted RSA 507-B:2, as well as RSA 231:90 through :92, as part of Senate Bill 151-FN. *See* Laws 1991, ch. 385; *see also Opinion of the Justices*, 134 N.H. 266, 271 (1991) (considering Senate Bill 151-FN prior to its enactment). The purpose of Senate Bill 151-FN was "to provide municipalities with the greatest possible protection from highway and sidewalk liability, consistent with the constitution." Laws 1991, 385:1.

Senate Bill 151-FN also amended RSA 412:3 to add the phrase "except when a standard of care differing from that of [a] private corporation is set

forth by statute." Laws 1991, 385:8. Prior to this amendment, RSA 412:3 did not include any such exception, providing only that a municipality's liability "shall be determined as in the case of a private corporation." RSA 412:3 (1983).

■ The legislative record does not reveal how the legislature intended the revision to RSA 412:3 to interact with the other statutory provisions created by Senate Bill 151-FN. Viewing the legislation as a whole, however, it appears that the legislature intended the exception added to RSA 412:3 to refer specifically to RSA 231:92. *See* Laws 1991, ch. 385. Section 5 of the legislation, entitled "Municipality Standard of Care," created RSA 231:92 and is the only section of Senate Bill 151-FN which is labeled as a standard of care. *See* Laws 1991, 385:5. We thus conclude that RSA 231:90 through :92 do, in fact, establish "a [statutory] standard of care differing from that of [a] private corporation," within the meaning of RSA 412:3 (1998) (repealed 2002) (current version at RSA 507-B:7-a (Supp. 2005)). We agree with the argument of the *amicus* that, with the 1991 amendment to RSA 412:3, the legislature expressed its intention that "[t]he presence or absence of liability insurance does not change the legal duty owed to users of highways, or change the type of conduct that constitutes a breach of such duty. The amount of any insurance available only serves to determine the amount of damages that may, upon proof, be recoverable from the municipality if it is in fact found to be a tortfeasor."

The plaintiff argues that this interpretation of RSA 231:90 through :92 and RSA 412:3 "render[s] meaningless [RSA 412:3]'s prohibition against insured municipalities asserting immunity defenses." We disagree. RSA 412:3 applies to an insured municipality's assertion of an immunity defense under any circumstances, not only with respect to the construction, maintenance, or repair of public highways and sidewalks. *See* RSA 412:3. Thus, the prohibition remains applicable under circumstances in which a statute does not set forth a standard of care different from that of a private corporation.

Although we have clearly stated that "a municipality may be held to a lower standard of care with respect to its highways and sidewalks than a private corporation," *Opinion of the Justices*, 134 N.H. at 279, we recognize the legitimate public policy concern, as stated by the plaintiff in her brief, that under our interpretation of RSA 231:90 through :92 and RSA 412:3, insurance purchased to guard against the risk of injury or damage involving hazardous highways and sidewalks may be "illusory and [may] negate one of the long-recognized justifications for allowing some degree of immunity for highways and sidewalks: namely, that [injured] citizens ... can be compensated by insurance purchased by

[municipalities], thus helping to mitigate the harshness of the sovereign immunity rule." Such matters of public policy, however, are reserved for the legislature, and we therefore leave to it the task of addressing the plaintiff's concerns. *Cf. Minuteman, LLC v. Microsoft Corp.*, 147 N.H. 634, 641-42 (2002).

In light of the foregoing, we conclude that the trial court did not err in instructing the jury with respect to the municipal liability provisions of RSA 231:90, RSA 231:91, and RSA 231:92, I.

## II. Applicability of RSA 231:92, I(b)

Next, the plaintiff argues that the trial court erred by instructing the jury regarding RSA 231:92, I(b), which provides that a municipality having actual, but not written, notice of an insufficiency will be liable only if it was grossly negligent or exercised bad faith in responding or failing to respond to its knowledge of the insufficiency. She contends that, pursuant to our holding in *City of Dover*, 133 N.H. at 120, Part I, Article 14 of the State Constitution requires that a municipality which has *actual* notice of an insufficiency in its highways and sidewalks be held to a standard of ordinary negligence so long as it has had an adequate opportunity to correct the condition, protect travelers from injury, or warn travelers of the hazard. She contends that, because the legislature intended to provide municipalities with "the greatest possible protection from highway and sidewalk liability, *consistent with the constitution*," Laws 1991, ch. 385 (emphasis added), we should conclude that "the legislature did not intend that the gross negligence standard of RSA 231:92[, I(b)] would be applied in a case like the present one where the municipality had ample actual notice and opportunity to repair." The plaintiff, however, failed to object to the instruction on this basis when it was given.

It is well established that a party must make a specific and contemporaneous objection during trial to preserve an issue for appellate review. *Broughton v. Proulx*, 152 N.H. 549, 552 (2005). This requirement affords the trial court an opportunity to correct any error it may have made and is grounded in common sense and judicial economy. *Id.* Here, although the plaintiff did object to instructing the jury regarding RSA 231:92, I(b), she argued only that: (1) RSA 231:90 through :92 are inapplicable due to the existence of liability insurance, pursuant to RSA 412:3; (2) RSA 231:92, I(b) is inapplicable because the City received "sufficient written notice" of the alleged insufficiency under RSA 231:92, I(a); and (3) RSA 231:92, I(b) is "void for vagueness" because it does not define "gross negligence." The trial court was not afforded an opportunity to consider her current objection to the instruction. *Cf. Broughton*, 152

N.H. at 552. Therefore, the issue has not been preserved for our review. *See State v. Blackmer*, 149 N.H. 47, 48 (2003).

### III. The Inclement Weather Instruction

Finally, the plaintiff argues that the trial court's inclement weather instruction, given pursuant to RSA 231:92-a (the inclement weather provision), was erroneous because: (1) the inclement weather provision is not applicable to the facts of this case; and (2) even if it is applicable, the language of the instruction itself was deficient. We address each argument in turn.

The inclement weather provision provides, in pertinent part:

> [A] municipality ... shall not be held liable for damages arising from insufficiencies or hazards on public highways, bridges, or sidewalks, even if it has actual notice or knowledge of them, when such hazards are caused solely by snow, ice, or other inclement weather, and the municipality's ... failure or delay in removing or mitigating such hazards is the result of its implementation, absent gross negligence or reckless disregard of the hazard, of a winter or inclement weather maintenance policy or set of priorities adopted in good faith by the officials responsible for such policy ....

RSA 231:92-a.

The trial court, based upon the inclement weather provision, instructed the jury that "a municipality may not be held liable for damages arising from hazards on public highways, bridges or sidewalks caused by snow, ice or other inclement weather unless there is evidence of reckless disregard or gross negligence in failing to remove such hazards." The plaintiff objected, stating that she believed that RSA 231:92-a "does not apply under the circumstances of this case because this was not the issue of a sudden ice, snow or rainstorm creating a hazard but rather the situation of a preexisting hazard that the City had plenty of time to anticipate." The plaintiff again raised her objection to the applicability of the inclement weather instruction in her motion to set aside the verdict and for a new trial. The trial court concluded that "the evidence in [this] case concerning the rain event at issue and its effect was sufficient to support the giving of [the inclement weather] instruction."

#### A. Applicability of the Inclement Weather Provision

The plaintiff contends that the inclement weather provision does not apply to the facts of this case "because here the hazardous displacement of the manhole cover was caused only in part by heavy rain, and the failure of

the city to correct the conditions which allowed manhole covers to be displaced was also a major cause of the displacement, the resulting collision, and plaintiff's injuries." We disagree.

It is within the sound discretion of the trial court to determine whether or not a particular jury instruction is necessary. *State v. Littlefield*, 152 N.H. 331, 334 (2005). We review the trial court's decision to give the inclement weather instruction in this case for an unsustainable exercise of discretion. *See id.*

■ The applicability of the inclement weather provision's limitation on municipal liability is predicated upon a finding that the hazard at issue is caused solely by inclement weather. *See* RSA 231:92-a. Whether the hazard is caused solely by inclement weather is a factual issue for the jury to decide. Generally, a trial court may give a jury instruction so long as there is some evidence supporting the applicability of the instruction to the facts of the case. *See Vachon v. New England Towing*, 148 N.H. 429, 433-34 (2002). When the instruction is predicated upon the jury's finding of a fact that is in dispute, the trial court is justified in giving the instruction where "there is testimony tending to support the supposed state of facts with which the jurors are properly made acquainted." 89 C.J.S. *Trial* § 666 (2001); *see Frost v. Stevens*, 88 N.H. 164, 165-66 (1936). If the predicate factual finding is not supported by the evidence, however, it is error for the trial court to instruct the jury on the issue. *See Lindberg v. Swenson*, 95 N.H. 184, 186 (1948).

■ Here, while there may have been testimony to support the plaintiff's argument that the hazard of manhole cover displacement was *not* caused solely by inclement weather, there was also testimony tending to support the argument that the same hazard was caused solely by inclement weather. Several City employees testified that manhole cover displacement in the City was caused by heavy rain. Given this testimony, we cannot say that the trial court's decision to give the inclement weather instruction was an unsustainable exercise of discretion.

■ The plaintiff urges us to consider the policy behind RSA 231:92-a and find it inapplicable to her case. She argues that the rationale behind RSA 231:92-a "is to protect municipalities from liability for sudden weather hazards, which do not allow time for corrective action." She contends that "[t]he evidence showed that ... displacement of manhole covers was a long-standing problem of which the [City] was well aware" and, accordingly, the hazard "was not the type of sudden weather event RSA 231:92-a was intended to address." However, the plain and unambiguous language of the inclement weather provision contains no requirement that

the hazard caused by inclement weather be sudden, unpredictable, or difficult to correct promptly. *See* RSA 231:92-a. When a statute's language is plain and unambiguous, we need not look beyond it for further indication of legislative intent, and we will not consider what the legislature might have said or add language that it did not see fit to include. *Carlisle*, 152 N.H. at 762.

### B. The Language of the Inclement Weather Instruction

The plaintiff also argues that the trial court erred in instructing the jury based upon the inclement weather provision by omitting the word "solely" from its instruction. The City argues that the plaintiff failed to timely object to the instruction on this basis, and thus failed to preserve her objection for appellate review.

The plaintiff concedes that she did not object to the omission of the word "solely" when the instruction was given. She argues, however, that the objection that she did make to the inclement weather instruction, arguing that the instruction was inappropriate because the hazard was not caused solely by inclement weather, was "sufficient to put the trial court on notice that the instruction as given was inappropriate to the circumstances of the case." We disagree.

As stated above, it is well established that a party must make a specific and contemporaneous objection during trial to preserve an issue for appellate review. *Broughton*, 152 N.H. at 552. Here, the plaintiff's objection addressed only the applicability of the inclement weather provision, and the trial court was not afforded an opportunity to consider her current objection to the language of the instruction. *Cf. id.* Therefore, the issue has not been preserved for our review. *See Blackmer*, 149 N.H. at 48.

Nevertheless, the plaintiff argues that we should review the trial court's instruction for plain error. *See* SUP. CT. R. 16-A. The plain error rule allows us to consider errors not brought to the attention of the trial court. *Id.* However, the rule should be used sparingly, its use limited to those circumstances in which a miscarriage of justice would otherwise result. *State v. MacInnes*, 151 N.H. 732, 736-37 (2005). For us to find error under the rule: "(1) there must be an error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity or public reputation of judicial proceedings." *Id.* at 737. Even assuming that there was error in this case, and that the error was plain, the burden is on the plaintiff to prove that the error affected substantial rights. *See State v. Emery*, 152 N.H. 783, 787 (2005).

The plaintiff contends in her brief that the error affected her substantial rights. However, she provides no argument in support of her contention except to cite to our decision in *Carson v. Maurer*, 120 N.H. 925, 931-32 (1980), and to note parenthetically that the decision "recogniz[es] that the right to seek compensation for personal injuries is an important substantive right protected by the New Hampshire Constitution." (Quotation omitted.) The plaintiff apparently contends that an error affects the substantial rights of the appealing party whenever that party is seeking compensation for personal injuries. The plaintiff appears to have misconstrued the third prong of the plain error rule.

Generally, for a plaintiff to satisfy the burden of proving that an error affected the substantial rights of the plaintiff, he or she "must demonstrate that the error was prejudicial—that it affected the outcome of the proceeding." *Emery*, 152 N.H. at 787. Here, the plaintiff failed to demonstrate that the omission of the word "solely" from the inclement weather instruction affected the outcome of the proceeding, and thus failed to satisfy her burden of proof on the third prong of the plain error rule. Therefore, we do not find error under the rule.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, GALWAY and HICKS, JJ., concurred.